MARK WILLIAMS *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
(14722)

PETERS, C. J., BORDEN, BERDON, KATZ and PALMER, Js.

Argued January 6—decision released May 17, 1994

*James K. Smith,* for the appellant (plaintiff).

*John W. Lemega,* with whom was *Daniel J. Scapellati,* for the appellee (defendant).

*William I. Garfinkel, William F. Gallagher* and *Stewart M. Casper* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

BORDEN, J. The principal issue in this appeal concerns the choice of state law applicable to this insurance contract dispute, involving an automobile accident that occurred in New York state. The plaintiff, Mark

Williams, a resident of Connecticut, appeals[1] from the judgment of the trial court denying his application to vacate the award of an arbitration panel in favor of the defendant, State Farm Mutual Automobile Insurance Company. The panel applied New York law rather than Connecticut law to the dispute, and concluded that the plaintiff was not entitled to recovery under New York law. The plaintiff claims that the trial court improperly: (1) applied New York law rather than Connecticut law; and (2) concluded that the plaintiff was not entitled to recovery under New York law. We affirm the judgment of the trial court.

The record reveals the following facts. On June 5, 1987, the plaintiff was operating his motor vehicle on a public thoroughfare in New Windsor, New York, when a vehicle owned and operated by Rolly Bain negligently struck the plaintiff's vehicle. Bain carried a California motor vehicle operator's license and his vehicle was registered in New York.

The plaintiff suffered neck and chest injuries as a result of the accident. He received medical treatment at the scene of the accident and was transported by ambulance to a hospital in West Point, New York. The injury to the plaintiff's neck caused mild pain and inconvenience in the months following the accident and, as of January, 1991, the plaintiff continued to suffer discomfort and disruption of daily activities. Moreover, two physicians estimated a 10 to 15 percent permanent partial disability of the cervical spine. A third physician, however, reported no evidence of permanent injury. The plaintiff, a police officer, has not missed any work as a result of the injury. His medical expenses totaled $2253.

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

At the time of the accident, Bain, the tortfeasor, was insured for the $10,000 minimum under New York's no-fault insurance law.[2] Bain's insurance carrier exhausted its liability coverage by virtue of a $10,000 payment to the plaintiff. The plaintiff, however, was insured by the defendant under a policy that provided uninsured motorist coverage in the amount of $25,000 per person and $50,000 per accident.[3] The plaintiff sought compensation from the defendant for the $15,000 difference between his uninsured motorist coverage and Bain's policy limit. The defendant denied liability and the plaintiff demanded arbitration pursuant to the policy.

For the purposes of arbitration, the defendant conceded that Bain's negligence had been the sole cause of the accident and that Bain was underinsured in the amount of $15,000.[4] The defendant argued, however, that it was not liable because the plaintiff's policy entitled him only to damages that he was "legally

[2] See N.Y. Ins. Law § 5101 et seq. (McKinney 1985).

[3] Section III of the insurance policy issued by the defendant to the plaintiff provides in relevant part: "We [the defendant] will pay damages for bodily injury an insured is *legally entitled to collect from the owner or driver* of an uninsured motor vehicle. . . . Uninsured Motor Vehicle—means: 1. a land motor vehicle, the ownership, maintenance or use of which is . . . insured or bonded for bodily injury liability at the time of the accident; but— (1) the limits of liability are less than required by the financial responsibility act of *the state where your [the plaintiff's] car is maintained or garaged;* or (2) the insuring company denies coverage or becomes insolvent; or (3) the sum of the limits of liability of all policies and bonds that apply is less than the limits of liability of this and any other uninsured motor vehicle coverage applicable to the insured." (Emphasis added.)

An amendment to the policy further provides in relevant part: "Deciding Fault and Amount—Arbitration

"Two questions must be decided by agreement between the insured and us: *1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle;* and 2. If so, in what amount? If there is no agreement, these questions shall be decided by arbitration . . . ." (Emphasis added.)

[4] The defendant specifically did not concede that the plaintiff's injuries warranted the additional $15,000 in damages.

entitled to collect"; see footnote 3; and that New York law governed the plaintiff's entitlement. The defendant further contended that under the New York nofault insurance law, the plaintiff could not maintain an action against the tortfeasor because he had not sustained either "serious injury" or basic economic loss in excess of $50,000.[5] The plaintiff, to the contrary, argued that Connecticut contract law governed the agreement between the parties, and that under Connecticut law the plaintiff was entitled to the benefits. The plaintiff also argued that even if New York law controlled, the plaintiff was legally entitled to collect damages because he had sustained a serious injury.

The arbitrators agreed with the defendant. They concluded that although Connecticut law governed the contract of insurance, New York law governed the question of whether the plaintiff was legally entitled to collect damages from the tortfeasor. Moreover, applying the "most significant relationship" analysis we utilized in *O'Connor* v. *O'Connor,* 201 Conn. 632, 519 A.2d 13

---

[5] Section 5104 of the New York Insurance Law (McKinney 1985) provides in relevant part: "CAUSES OF ACTION FOR PERSONAL INJURY. (a) Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."

Section 5102 (a) of the New York Insurance Law (McKinney 1985) defines "basic economic loss" as up to $50,000 per person of medical expenses, lost earnings, and specified incidental expenses. Section 5102 (d) defines "serious injury" as "personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

(1986), the panel determined that New York's law should govern because its relationship to the case was more significant than that of Connecticut. Finally, the panel concluded that under New York law, the plaintiff was not entitled to collect damages from the tortfeasor because his injuries were not sufficiently severe.

Pursuant to General Statutes §§ 52-418 and 52-420, the plaintiff filed an application in the Superior Court to vacate the arbitrator's award. The trial court denied the plaintiff's application, essentially for the same reasons relied on by the arbitration panel in rejecting his claim for benefits. This appeal followed.

I

The plaintiff first claims that the trial court improperly concluded that the plaintiff's right to collect damages under his insurance policy was determined by the law of New York. We are not persuaded.

The plaintiff's argument is in two parts. First, the plaintiff argues that the case is controlled by Connecticut's substantive law of contracts. Second, the plaintiff argues that even if the case were controlled by the substantive law of torts, the correct tort law to apply is that of Connecticut. We conclude that under either a tort or a contract analysis, the appropriate law to apply is that of New York. Thus, we need not determine which analysis to use.

A

We first turn to the plaintiff's contention that for choice of law purposes this is a contract case. The plaintiff argues that the insurance policy is a contract between the plaintiff and the defendant. That contract, he contends, obligates the defendant to pay the plaintiff any damages the plaintiff is "legally entitled to collect from the owner or driver of an uninsured motor

vehicle."[6] See footnote 3. The plaintiff argues that the phrase "legally entitled to collect" simply requires the injured party to prove fault by the uninsured motorist and the extent of damage.[7] In addition, the plaintiff contends that the policy's definition of uninsured motorists as motorists whose insurance liability limits "are less than required by the financial responsibility act of the state where your car is maintained or garaged"; see footnote 3; invokes Connecticut's no-fault insurance law because the plaintiff's car is maintained and garaged in Connecticut. The plaintiff relies finally on the rule of construction that ambiguity in an insurance contract is resolved against the insurance company that drafted the contract. See *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 250, 532 A.2d 1297 (1987).

---

[6] General Statutes (Rev. to 1991) § 38a-336 provides in relevant part: "UNINSURED MOTORIST COVERAGE. (a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-113, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom." This statute has been amended in ways that do not affect the current appeal. See Public Acts 1993, No. 93-77, §§ 2, 4, and No. 93-297, §§ 1, 29.

[7] The plaintiff relies on the following cases for that proposition: *Baker* v. *Continental Western Ins. Co.,* 748 F. Sup. 716 (W.D.S.D. 1990); *Allstate Ins. Co.* v. *Elkins,* 63 Ill. App. 3d 62, 381 N.E.2d 1 (1978), aff'd, 77 Ill. 2d 384, 396 N.E.2d 528 (1979); *Leuchtenmacher* v. *Farm Bureau Mutual Ins. Co.,* 461 N.W.2d 291 (Iowa 1990); *Winner* v. *Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973); *Gremillion* v. *State Farm Mutual Automobile Ins. Co.,* 302 So. 2d 712 (La. App.), cert. denied, 305 So. 2d 134 (La. 1974); *Matter of De Luca,* 17 N.Y.2d 76, 215 N.E.2d 482, 268 N.Y.S.2d 289 (1966); *Karam* v. *Allstate Ins. Co.,* 27 Ohio App. 3d 137, 500 N.E.2d 358 (1985). The statutes and issues in these cases have varying degrees of kinship to our own. To the extent that the cases support the plaintiff's claim, we reject them for the reasons given below.

The defendant concedes portions of the plaintiff's argument. It is undisputed that the insurance policy is a contract between the plaintiff and the defendant, and that the defendant is obligated to pay the plaintiff for any damages that the plaintiff is "legally entitled to collect" from the uninsured motorist. Moreover, there is no dispute that the tortfeasor, as a motorist whose liability insurance limit was less than the plaintiff's insurance limit, fits the definition of uninsured motorist in the insurance policy.

The usual rule is that a contract is to be construed according to the law of the place where the contract was made. See *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 637, 220 A.2d 254 (1966). The mere existence of the right to pursue a claim for uninsured motorist benefits under the contract, however, does not in and of itself entitle the plaintiff to recover those benefits. In order to recover uninsured motorist benefits, the plaintiff must prove, pursuant to the applicable statutes and regulations, as well as the contract, that he is "legally entitled to collect" damages from the uninsured motorist. We disagree with the plaintiff's assertion that this phrase merely requires proof that the uninsured party was at fault.

The purpose of uninsured motorist coverage is to provide a personal injury claimant access to insurance protection to compensate for damages that would have been recoverable if the uninsured motorist had maintained an adequate policy of liability insurance. *Smith* v. *Safeco Ins. Co. of America,* 225 Conn. 566, 573, 624 A.2d 892 (1993); *Bodner* v. *United Services Automobile Assn.,* 222 Conn. 480, 499, 610 A.2d 1212 (1992); *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 377, 593 A.2d 498 (1991); *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982). Such insurance does not grant an injured party an enhanced right of recovery, beyond the recov-

ery that would have been available had the tortfeasor maintained sufficient insurance. *Smith* v. *Safeco Ins. Co. of America,* supra, 573.

Under General Statutes (Rev. to 1991) § 38a-368,[8] a cause of action based on the negligent operation of a motor vehicle is allowable only if certain conditions are satisfied. If those conditions are not satisfied, then the injured party has no recourse beyond the no-fault liability coverage. The plaintiff's argument, however, would put a party injured by an uninsured motorist in a better position than a party injured by a sufficiently insured motorist. If the contractual phrase "legally entitled to collect from the owner or driver of an uninsured motor vehicle" entitled the plaintiff to recover simply upon proof of fault and damages, without proof of the conditions specified in § 38a-368, then the plaintiff would have an additional remedy not available to persons injured by sufficiently insured motorists. Thus, the phrase must have a meaning other than that suggested by the plaintiff.

We do not find the contractual language to be ambiguous and therefore we interpret it according to its plain meaning. "Legally entitled to collect damages from the

---

[8] General Statutes (Rev. to 1991) § 38a-368 provides in relevant part: "CAUSE OF ACTION ALLOWABLE, WHEN. (a) No cause of action to recover economic loss or noneconomic detriment based on negligence arising out of the ownership, maintenance or use of a private passenger motor vehicle may be maintained against an owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided as required by sections 38a-19 and 38a-363 to 38a-388, inclusive, or against any person or organization legally responsible for his acts or omissions, unless the injured party has sustained (1) death, (2) permanent injury, (3) fracture of any bone, (4) permanent significant disfigurement, (5) permanent loss of any bodily function, (6) loss of a body member or (7) allowable expense as defined in section 38a-363 in excess of four hundred dollars. Any person who receives free medical, hospitalization and surgical care shall be deemed to meet the requirement of subdivision (7) if the reasonable value of such care exceeds four hundred dollars." This statute has since been repealed. Public Acts 1993, No. 93-297, §§ 28, 29.

owner or driver of an uninsured motor vehicle," means that in order to recover under the policy, the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability.[9] Whether the uninsured motorist was legally liable must be determined in light of any substantive defenses that would have been available to the uninsured motorist.[10] See *Rhault* v. *Tsagarakos,* 361 F. Sup. 202 (D. Vt. 1973); *State Farm Mutual Automobile Ins. Co.* v. *Griffin,* 51 Ala. App. 426, 286 So. 2d 302 (1973); *State Farm Mutual Automobile Ins. Co.* v. *Girtman,* 113 Ga. App. 54, 147 S.E.2d 364 (1966); *Winner* v. *Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973).

In this case, any liability that would have attached to the uninsured motorist would have attached under the substantive law of New York. The rules for an action against a New York resident regarding a New York accident are clear. As the plaintiff conceded in oral argument before this court, if he had wished to sue the tortfeasor personally, the proper jurisdiction would have been New York.[11] In that New York action, the tortfeasor would have been entitled to raise the no-fault threshold of New York insurance law as a substantive defense. Thus, the tortfeasor's liability under the contract must be determined in light of New York no-fault insurance law.

[9] Although the contract refers only to an "uninsured motorist," it is undisputed that this phrase also includes, as in this case, an underinsured motorist. See footnote 3. Thus, in this context, the plaintiff must prove that his damages exceed the amount of liability coverage of the tortfeasor.

[10] Some courts have held that this determination does not include personal or procedural defenses. See *Winner* v. *Ratzlaff,* supra, 211 Kan. 59; *Matter of De Luca,* 17 N.Y.2d 76, 215 N.E.2d 482, 268 N.Y.S.2d 289 (1966). Because no-fault coverage is a substantive defense in New York and Connecticut, we need not decide that question.

[11] Unless the plaintiff could serve process on the tortfeasor while the tortfeasor happened to be passing through Connecticut, our courts could not obtain personal jurisdiction over the tortfeasor.

Even if we were to interpret the contractual phrase to refer to damages that the plaintiff is "legally entitled to collect" under Connecticut's motor vehicle insurance laws, the case would ultimately be referred to New York law. Under § 38a-336; see footnote 6; an injured party must exhaust his remedies against the tortfeasor before he is legally entitled to collect damages under uninsured motorist coverage. *General Accident Ins. Co. v. Wheeler,* 221 Conn. 206, 213 n.7, 603 A.2d 385 (1992); *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 212–13, 571 A.2d 104 (1990). In this case, the condition of exhaustion was satisfied because the tortfeasor's liability insurance company settled the case by paying the plaintiff the tortfeasor's entire policy limit. Had it not done so, however, the plaintiff would have had to exhaust his remedies by suing the tortfeasor; and he would have been required to do so in New York. We decline to adopt a rule of contract interpretation that makes the choice of law depend upon the fortuity of whether the tortfeasor, or its liability carrier, chooses to settle the case without a contest. Consequently, even if we were to accept the plaintiff's contention that the case is governed by Connecticut's law of contracts and motorist insurance, the dispositive legal standards would be imported from New York.

B

We reach the same conclusion based on an analysis grounded in the law of torts. The plaintiff contends that under §§ 6 and 145 of the Restatement (Second) of the Conflict of Laws,[12] which we utilized in *O'Connor* v.

---

[12] Section 6 of the Restatement, supra, provides: "CHOICE-OF-LAW PRINCIPLES

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

*O'Connor,* supra, 201 Conn. 650, the correct law to apply is that of Connecticut. We disagree.

"This court has traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delicti. *Gibson* v. *Fullin,* [172 Conn. 407, 411, 374 A.2d 1061 (1977)]; *Menczer* v. *Menczer,* 160 Conn. 563, 564–65, 280 A.2d 875 (1971); *Landers* v. *Landers,* 153 Conn. 303, 304, 216 A.2d 183 (1966); *Orr* v. *Ahern,* 107 Conn. 174, 176, 139 A. 691 (1928)." *O'Connor* v. *O'Connor,* supra, 201 Conn. 637. Recently, however, we have recognized that, in certain circumstances in which the traditional doctrine does not apply, the better rule is the analysis contained in the Restatement (Second) of the Conflict of Laws.

One such case was *Simaitis* v. *Flood,* 182 Conn. 24, 33, 437 A.2d 828 (1980). In *Simaitis,* a passenger in

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

Section 145 of the Restatement, supra, provides: "THE GENERAL PRINCIPLE

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

an automobile brought an action in negligence against the driver of the automobile for injuries caused by an automobile accident in Tennessee. Both parties were Connecticut domiciliaries employed by a Connecticut corporation, and the accident occurred while they were travelling in the course of their employment. The worker's compensation act of Tennessee barred the plaintiff's action, but the Connecticut Workers' Compensation Act permitted such an action. Applying the rule of lex loci delicti, the trial court granted the defendant's motion for summary judgment on the basis of Tennessee law. We concluded that application of the lex loci delicti rule in these circumstances was unsatisfactory because it would "bestow upon temporary visitors injured in Connecticut all the relief which the Connecticut compensation act affords, but deny that same relief to Connecticut residents injured while on temporary business outside the state, even when all other incidents of employment . . . are in Connecticut." Id., 29–30. We resolved the conflict by weighing the respective interests of Connecticut and Tennessee in applying their law to the controversy, in the manner of the Restatement, and concluded that the law of Connecticut governed the plaintiff's right to recover. Id., 33–34.

In *O'Connor* v. *O'Connor,* supra, 201 Conn. 648, we expressly abandoned "categorical allegiance" to the doctrine of lex loci delicti in tort actions. *O'Connor* also involved an action by the passenger of an automobile against the driver for injuries arising out of an automobile accident. Both parties were Connecticut domiciliaries but the accident occurred in Quebec, Canada. The principal issue was whether to apply the law of Quebec, which barred the plaintiff's action, or the law of Connecticut, which permitted it. The trial court applied the doctrine of lex loci delicti and granted the defendant's motion to strike the plaintiff's com-

plaint. On appeal, we substituted the "most significant relationship" analysis of §§ 6 and 145 of the Restatement; see footnote 12; for the doctrine of lex loci delicti. Id., 650. After considering the Restatement factors, we concluded that Connecticut had the closest relationship and the greatest interest in the disposition of the case. We therefore applied the law of Connecticut.

In this case, however, an analysis based on the Restatement leads us to apply the law of New York. Section 145 of the Restatement lists the contacts of each jurisdiction that are factors in determining the choice of law under § 6. These contacts include: (a) the place of injury; (b) the place where the conduct causing the injury occurred; (c) the domiciles of the parties;[13] and (d) the place where the relationship, if any, between the parties is centered. See footnote 12. In this case, the injury occurred in New York due to conduct occurring in New York. Thus, factors (a) and (b) point toward the application of New York law. According to the Restatement, those two factors are the most significant in determining which state's tort law to apply. As comment (e) to § 145 provides: "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law . . . ."[14] Moreover, factor (c) is inconclusive because the plaintiff is domiciled in Connecticut but the

[13] For the purposes of this analysis, we note that the relevant parties are the plaintiff and the tortfeasor, not the plaintiff and the defendant. Under General Statutes § 38a-366, the plaintiff can recover from the defendant only what he could have recovered from an adequately insured tortfeasor.

[14] See also § 146 of the Restatement, supra, which provides: "PERSONAL INJURIES

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

tortfeasor carried a California motor vehicle operator's license and registered his car in New York.[15] Finally, factor (d) is irrelevant because there was no relationship between the parties other than the accident. Thus, on the whole, we conclude that New York had the greatest contact with the parties.

The interests to be considered in determining the choice of law under § 6 also affirm the application of New York law. For purposes of this analysis, the relative policy interests of New York and Connecticut are the most important factors.[16]

The first factor to be considered is the relevant policy interest of the forum state, Connecticut. The plaintiff contends that Connecticut has an interest in protecting its residents with uninsured motorist coverage, and that we should therefore apply our own law in order to ensure the plaintiff access to sufficient coverage. The plaintiff is correct that Connecticut has such an interest: our uninsured motorist statute is remedial in nature and designed to protect people injured by uninsured motorists. See, e.g., *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 219 Conn. 377; *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 197, 530 A.2d 171 (1987); *Harvey* v. *Travelers Indemnity Co.,* supra, 188 Conn. 250-51.

---

[15] In dicta in *O'Connor,* we stated that the choice of law would have been "much more problematic," and that Quebec law would have been "entitled to greater weight" if the accident had involved a Quebec resident. *O'Connor* v. *O'Connor,* supra, 201 Conn. 632.

[16] The other factors listed in § 6 of the Restatement, supra, are less important in this case. Predictability and the protection of settled expectations are less significant because the settled expectations of parties are generally less important in unintentional torts than they are in fields such as contracts, property, and wills and trusts, in which parties make plans on the basis of the legal consequences of their conduct. See *O'Connor* v. *O'Connor,* supra, 201 Conn. 651-52; Restatement, supra, § 6, comment (i), and § 145, comment (b). Moreover, this case does not implicate interstate or international relations.

The plaintiff's argument, however, overlooks the fact that the plaintiff was entitled to, and in this case actually received, no-fault insurance benefits.[17] New York, like Connecticut, has a comprehensive scheme of insurance coverage and, if the case is to be decided under New York law, the plaintiff is subject to the benefits of New York no-fault insurance as well as the limitations. Indeed, New York's no-fault insurance minimum is considerably higher than that of Connecticut.[18] Thus, Connecticut's concern for the protection of its residents is satisfied in this case if the plaintiff's claim is governed by the law of New York.

The second factor to be considered is the relevant policy interest of the state with the greatest connection with the injury, New York. The plaintiff contends that New York's policy of containing no-fault premiums and reducing litigation arising from automobile accidents; see *Licari* v. *Elliot,* 57 N.Y.2d 230, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (1982); is not advanced by application of New York law to this Connecticut arbitration. Although we agree that New York has less interest in the efficiency of Connecticut's legal processes than it has in its own, we do not agree that New York's interest is as insignificant as the plaintiff contends. This automobile accident occurred in New York and the plaintiff received his preliminary medical care in New York. Moreover, the tortfeasor's vehicle was registered in New York. Application of the law of a state other than New York in such circumstances could inject an element of uncertainty into New York insurance policies. Such a result could have a deleterious effect on

[17] It is unclear whether the no-fault benefits were paid under the law of Connecticut or New York.

[18] The coverage limit in New York is $50,000. See N.Y. Ins. Law §§ 5102 (a), 5103, 5107 (McKinney 1985); 11 N.Y. Comp. Codes, R. & Regs. § 60-1.1. In Connecticut, the limit at the time was $5000. General Statutes (Rev. to 1987) § 38-320, now § 38a-365.

New York's goals of reducing litigation and the cost of premiums in New York. Moreover, New York has no interest in the application of the law of Connecticut to this case.

In addition, the courts of Connecticut can easily apply the law of New York in this case. New York provides a simple test for determining whether an injured motorist is permitted to bring an action in tort. See footnote 5. There is little risk of overburdening Connecticut courts or misapplying New York law if, in the circumstances of this case, New York's threshold is applied.

Weighing these interests, we conclude that the law of New York is the correct law to apply in the circumstances of this case. Connecticut's interests are sufficiently satisfied by the application of New York law, and New York's interests are satisfied in the application of its own law. Most important, New York has the greatest contact with the conduct that gave rise to the case.

Courts of other states have reached similar conclusions in similar circumstances.[19] In *State Farm Mutual Auto Ins. Co.* v. *Crockett,* 103 Cal. App. 3d 652, 163 Cal. Rptr. 206 (1980), the California Court of Appeals applied Hawaii law to bar a claim for uninsured motorist benefits brought by two California residents who were injured in an automobile accident while in Hawaii. The insurance contract of the California residents provided compensation for damages that they were "legally entitled to recover," but the injuries they sustained were insufficient to permit a cause of action under Hawaii no-fault law. The court concluded that

---

[19] Professor Alan Widiss, in his treatise on uninsured motorist insurance, observes that courts in most jurisdictions facing choice of law questions involving uninsured motorist coverage have resolved the questions in accordance with their general approach to choice of law questions, rather than the bare contractual language. 1 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. 1990) § 7.15.

since the California residents were not entitled to recover from the uninsured motorist, they were not entitled to recovery under the policy.

Similarly, in *Berardi, U.S.A.* v. *Employers Mutual Casualty Co.,* 526 A.2d 515, 516 (R.I. 1987), the Supreme Court of Rhode Island applied the "interest-weighing approach" to a case almost identical to the present one. The plaintiffs in *Berardi, U.S.A.,* were driving an automobile registered in Rhode Island in New York when they collided with an automobile driven by an uninsured resident of New York. The relevant insurance contract provided that the plaintiffs could recover damages that they were "legally entitled to recover" from the uninsured motorist. The plaintiffs' injuries, however, were insufficient to allow an action in tort under New York's no-fault insurance law. The court weighed the interests of the two states and decided to apply the law of New York, which it held to bar recovery under the contract.

## II

The plaintiff next claims that, even if New York law governs this case, the trial court improperly agreed with the arbitration panel that the plaintiff's suit was barred by New York no-fault insurance law. We disagree with the plaintiff's claim.

Under New York no-fault insurance law, an injured party is not entitled to bring an action in negligence except in the case of "serious injury," or "basic economic loss" in excess of $50,000. See footnote 5. The arbitration panel concluded that the plaintiff's harm was insufficient to cross this threshold, and the trial court agreed with this factual finding.

In reviewing an arbitration panel's factual findings regarding underinsured motorist coverage, the trial court is required to determine whether the arbitrators'

findings are supported by substantial evidence. *Ryding-sword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 21, 615 A.2d 1032 (1992); *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 656, 591 A.2d 101 (1991). This test requires that the court search the entire record in order to determine, de novo, whether the arbitration panel's findings of fact were supported by substantial evidence. *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 667.

There is no doubt in this case that the plaintiff has not suffered basic economic loss in excess of $50,000. The plaintiff's medical expenses totaled $2253 and he missed no work as a result of the injury. Thus, the question centers on whether the plaintiff sustained serious physical injury under the definition of § 5102 (d) of the New York Insurance Law.

The records of one physician indicated that the plaintiff had suffered no permanent disability as a result of the accident. The records of two other physicians indicated that the plaintiff had suffered, at worst, a 15 percent permanent partial disability of the cervical spine. Although the plaintiff testified to persistent discomfort from the injury, the record indicates that he has continued to work, exercise, and essentially maintain his customary lifestyle. The New York courts have consistently maintained that greater injury than this is required to qualify as serious injury in this context. See, e.g., *Partlow* v. *Meehan,* 155 App. Div. 2d 647, 548 N.Y.S.2d 239 (1989); *McKnight* v. *LaValle,* 147 App. Div. 2d 902, 537 N.Y.S.2d 421, appeal denied, 74 N.Y.2d 605, 541 N.E.2d 427, 543 N.Y.S.2d 398 (1989); *Popp* v. *Kremer,* 124 App. Div. 2d 720, 508 N.Y.S.2d 470 (1986); *Lowe* v. *Bennett,* 122 App. Div. 2d 728, 511 N.Y.S.2d 603, aff'd, 69 N.Y.2d 700, 504 N.E.2d 691, 512 N.Y.S.2d 364 (1986). Thus, substantial evidence supports the trial court's conclusion that the arbitra-

tion panel correctly found that the plaintiff's injuries had not met the New York "serious injury" threshold.

The judgment is affirmed.

In this opinion PETERS, C. J., KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. I respectfully disagree. Under the facts of this case, we are required to apply Connecticut law to the contract of insurance that was issued to a Connecticut resident and is silent as to the law that is to be applied.

The majority predicates its opinion on the claim that the contractual language of the insurance policy— "legally entitled to collect damages"—is unambiguous. That simply is not the case. It certainly is arguable that the phrase in question could mean that, in order to recover under the uninsured/underinsured provisions of the policy, the insured must prove that the other driver was legally liable for the payment of damages as the majority states. It is, however, equally persuasive that the contract language merely means that the plaintiff must establish that the other driver was at fault. See 1 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. 1990) § 7.6, pp. 263–64 (language "legally entitled to recover" is ambiguous).

Because the contract language is ambiguous, I would construe it in favor of the plaintiff. "It is a basic principle of insurance law . . . that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *Cody* v. *Remington Electric Shavers,* 179 Conn. 494, 497, 427 A.2d 810 (1980); *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.,* 224 Conn. 313, 320, 617 A.2d 1388 (1992); *King* v. *Travelers Ins. Co.,*

123 Conn. 1, 4–5, 192 A. 311 (1937); see 1 A. Widiss, supra, p. 264 ("legally entitled" contract language being ambiguous, it should be construed against the insurer).

Accordingly, I would construe the "legally entitled" contract language to mean that the insured must establish that the uninsured/underinsured motorist was at fault. This construction has been adopted by a substantial number of jurisdictions. See, e.g., *Allstate Ins. Co.* v. *Elkins,* 77 Ill. 2d 384, 390, 396 N.E.2d 528 (1979); *Matter of De Luca,* 17 N.Y.2d 76, 80–81, 215 N.E.2d 482, 268 N.Y.S.2d 289 (1966); *Karlson* v. *Oklahoma City,* 711 P.2d 72, 74–75 (Okla. 1985); *Sahloff* v. *Western Casualty & Surety Co.,* 45 Wis. 2d 60, 68–69, 171 N.W.2d 914 (1969); 3 A. Widiss, supra, § 34.2, p. 33 ("[a] very persuasive case exists for allowing an insured to recover underinsured motorist insurance when a tort immunity precludes securing indemnification from a tortfeasor").[1]

Because I would find no contractual impediment to the plaintiff's recovery in this case, it must next be determined whether the law of Connecticut—the place where the contract was entered into—or the law of New York—the place where the accident occurred—should control. In making this determination, I would hold that contract choice of law principles are most appropriately

---

[1] I would accordingly hold that the statutory mandate requiring that uninsured/underinsured motorist policies protect those insured parties who are "legally entitled to recover damages"; General Statutes (Rev. to 1991) § 38a-336 (a) (1); should be given the same interpretation—that is, the insured party must be able to prove fault, but is not necessarily restricted by tort immunities or other procedural bars to liability against the tortfeasor. See *Sahloff* v. *Western Casualty & Surety Co.,* supra, 45 Wis. 2d 69. This construction is in accordance with the established public policy of the uninsured/underinsured motorist statutes. "The public policy embodied in these statutes 'favors indemnification of accident victims unless they are responsible for the accident.' Widiss, A Guide to Uninsured Motorist Coverage (1969) § 2.9, p. 29." *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 250, 449 A.2d 157 (1982).

applied to the facts of this case. *Davis* v. *State Farm Mutual Automobile Ins. Co.,* 264 Or. 547, 549, 507 P.2d 9 (1973) (holding that action to collect the proceeds of an uninsured motorist policy arising out of injuries caused by the tortfeasor is controlled by contract, not tort, choice of law principles); see *Matter of De Luca,* supra, 17 N.Y.2d 80–81 (applying six year contract statute of limitations, rather than three year tort statute of limitations, to action against uninsured motorist carrier).

Contract choice of law principles mandate the application of Connecticut law. The general rule is that when the contract is silent as to the choice of law, the controlling law is that of the place where the contract was entered. See *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 637, 220 A.2d 254 (1966). It is undisputed that the contract of insurance was issued in Connecticut. Furthermore, a contract of automobile insurance issued in Connecticut must meet the state's minimum uninsured/underinsured motorist coverage requirements. See General Statutes (Rev. to 1991) § 38a-336 (a) (1). Accordingly, the uninsured/underinsured motorist laws of this state would be applicable, including the conditions established by General Statutes (Rev. to 1991) § 38a-368, which establishes Connecticut's no-fault threshold, rather than New York's no fault threshold.

This court's reasoning in the closely analogous case of *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 205 A.2d 780 (1964), is persuasive and should control this case. In *Jenkins,* a policy of insurance was issued to the plaintiff in New York. The plaintiff's wife was injured in an accident occurring in Connecticut while a passenger in his automobile. The defendant insurer who had issued the policy "denied liability under the policy, and refused to defend any action brought by the wife, on the ground that the wife's claim was an inter-

spousal claim against her husband and, as such, was excluded from coverage by'' New York law. Id., 252. She sued the plaintiff in Connecticut and recovered a judgment against him, and the plaintiff sued for a declaratory judgment seeking to hold the defendant liable. Id., 253. The plaintiff claimed that Connecticut law should apply because ''the policy was to apply 'within the United States of America, its territories or possessions, or Canada,' '' and therefore ''its place of operative effect is wherever, within those territorial limits, an accident occurs.'' Id., 254. This court in *Jenkins* acknowledged a qualification to the general rule that the law of the place where the contract entered into controls: ''[I]f the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction.'' Id., 253. Nevertheless, this court determined that the ''operative effect'' principle was inapplicable, reasoning that it was not ''consistent with the purpose of the parties in entering into the contract. Presumably, that purpose was to fix in advance their rights and liabilities in the event of an accident, at least so far as the construction and interpretation of the contract are concerned, rather than to leave them dependent upon the fortuitous circumstance of the place of the accident. Indeed, the assumption underlying our applicable conflicts rule is that when parties enter into a contract they do so with the law of a specific jurisdiction in mind. . . . There is nothing in the instant case to suggest that this assumption is unfounded with respect to this insurance contract.'' (Citation omitted.) Id., 254.

Accordingly, in *Jenkins,* this court recognized a limitation to the principle that the law of the place of operative effect or place of performance controls. We held that when a contract of insurance is silent as to the

choice of law and intended to be operative in any one of numerous jurisdictions, the validity and construction of such a contract is governed by the law of the place where the insurance policy was issued. Id.

In the present case, as in *Jenkins*, the contract of insurance covered the plaintiff not only in New York (the place where the accident occurred) but within the entire United States, its territories and possessions, Canada and Puerto Rico. Accordingly, the law to be applied here is the place where the contract was issued—Connecticut. This choice of law result is supported by other jurisdictions. See, e.g., *Davis* v. *State Farm Mutual Automobile Ins. Co.*, supra, 264 Or. 549, citing *Grayson* v. *National Fire Ins. Co.*, 313 F. Sup. 1002, 1007 (D.P.R. 1970). In *Davis*, the plaintiff sought recovery under his own uninsured motorist coverage, issued in Michigan, when a third party intentionally injured him with an automobile in Oregon. The Oregon Supreme Court held: "The parties do not agree whether Oregon or Michigan law applies. Courts have much difficulty with conflicts of law questions in the tort field. However, this case is an action upon a contract. The contract was entered into in Michigan under the authority of a Michigan statute and was issued to Michigan residents. The place of [the] plaintiff's injury was fortuitous. Under such a set of facts, Michigan law applies."[2] *Davis* v. *State Farm Mutual Automobile Ins. Co.*, supra, 549.

---

[2] Even if I were to determine that the issues in this case implicate both contract and tort principles and require an interest-balancing choice of law analysis, I would come to the same conclusion. Section 6 of the Restatement (Second) of the Conflict of Laws provides: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protec-

The majority also points out that if the insurer of the tortfeasor had not settled by paying the entire proceeds of the tortfeasor's insurance policy, the "exhaustion" rule of *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 212–13, 571 A.2d 104 (1990), would apply. In *Continental Ins. Co.,* a three to two decision in which Justices Shea and Callahan vigorously dissented; id., 214; the court held that the exhaustion requirements

tion of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Applying these factors, I note first that, as the majority points out, the issue raised by this case has no bearing on the interstate and international systems. As for factors (b) and (e), the public policy embodied in these statutes, as previously noted, favors indemnification of accident victims unless they are responsible for the accident. I disagree with the majority, however, that this public policy is satisfied by just any recovery; it is best furthered by application of Connecticut's no-fault threshold so that the accident victim is indemnified to the extent that Connecticut's public policy, expressed through its statutory law, demands for its citizens. With regard to factor (c), application of Connecticut's no-fault threshold will affect no public policy interest of New York. As for factor (d), I believe that, realistically speaking, the justified expectations of the parties to this case would demand the application of Connecticut law. It is unlikely that the plaintiff intended the amount of his indemnification to depend on the vagaries of the law of fifty states, Canadian provinces, and United States territories and possessions, to be determined based on the happenstance of where an accident occurs. Furthermore, it is unlikely that application of Connecticut law would upset any settled expectations of the defendant. See 1 A. Widiss, supra, § 7.15, p. 312 ("the effect on [insurance] claims of the choice of law rules is almost certainly so speculative as to be a negligible factor in the actuarial determinations of the premiums that are charged by insurers for uninsured motorist insurance"). The last two factors—predictability and uniformity of result in the law and ease of application—clearly favor the use of Connecticut's law, not the law of whatever state, possession or province an accident happens to occur in.

I do not agree with the majority opinion that § 145 of the Restatement has any application to the facts of this case. As I indicate in this opinion, I believe that the issues in this case implicate a pure contractual question, but there is a colorable argument that there is a mixed question of contract and tort law. Nevertheless, I cannot see how the issues raised by this case could be understood to involve a pure torts problem, and therefore I believe that § 145, setting out principles applicable to pure torts problems, is wholly inapplicable.

of uninsured/underinsured motorist law would not be satisfied by crediting the insurer with the full policy limits of the tortfeasor's policy. Id., 213. Instead, the court held that the insurer of the tortfeasor must pay the full amount of that policy, either voluntarily or through litigation, before the injured party can seek indemnification under his or her own uninsured/underinsured motorist coverage.[3] Id.

Accordingly, the majority states that if the tortfeasor had contested liability in the present case, the plaintiff, in order to comply with *Continental Ins. Co.,* would have been required to bring an action against the tortfeasor in New York and that action would have failed because the threshold under New York law would not be met. I agree that a strict reading of *Continental Ins. Co.* would produce an anomalous choice of law result based on whether the insurer of the tortfeasor has chosen to settle or litigate the underlying dispute.

Nevertheless, we have demonstrated by the recent unanimous decision in *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 603 A.2d 385 (1992), our willingness to trim the sails of *Continental Ins. Co.* In *Wheeler,* we held, relying substantially on the reasoning of the *Continental Ins. Co.* dissent, that when there are two or more tortfeasors, the insured need only exhaust the policy of one of the tortfeasors. *General Accident Ins. Co.* v. *Wheeler,* supra, 213. I would fur-

---

[3] The dissent in *Continental Ins. Co.* argued persuasively: "I do not believe that the legislature, in defining the obligation of an insurer for the purpose of underinsured motorist coverage, intended to impose on the courts as well as the insured the burden of litigating each claim to an ultimate judgment unless the liability carrier pays the full amount of its coverage by way of settlement. The majority opinion does not suggest any possible benefit that can flow from such a requirement. In all probability, the legislature intended simply to limit the insurer's obligation by allowing a deduction from the value of the underinsured motorist claim for the amount of liability insurance available." *Continental Ins. Co.* v. *Cebe-Habersky,* supra, 214 Conn. 215 (*Shea, J.,* dissenting).

ther limit *Continental Ins. Co.* and hold that when the forum in which an action is required to be brought against the tortfeasor has established lawsuit prerequisites that are greater than those of our state law, but the underlying insurance policy is issued in Connecticut to a Connecticut resident, the purposes of our uninsured/underinsured motorist statute are satisfied by giving the insurer a full credit for the tortfeasor's available insurance coverage.

I would hold that the arbitrators should have applied Connecticut law.[4] Because it is undisputed that the plaintiff met Connecticut's no-fault threshold, the arbitrator should have determined whether he was entitled to damages beyond the amount recovered from the tortfeasor's insurance policy. Accordingly, I would reverse the trial court's judgment, and remand this matter to the trial court with instruction to grant the plaintiff's application to vacate the arbitration award.

---

[4] The majority claims that the application of Connecticut's no-fault threshold to this case would provide the plaintiff with "an enhanced right of recovery, beyond the recovery that would have been available had the tortfeasor maintained sufficient insurance." I agree with the majority that, had the plaintiff sued a fully insured tortfeasor under otherwise identical circumstances, New York's higher no-fault threshold would have barred recovery against the tortfeasor. Nevertheless, the majority loses sight that the rights afforded to the plaintiff are pursuant to a contract of insurance for which the plaintiff paid a premium to the defendant, and in all likelihood the premium was calculated with reference to Connecticut's no-fault threshold, not that of New York. See footnote 3. The plaintiff has paid for the insurance coverage and is entitled to it.