[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In her three count complaint alleging negligence, breach of fiduciary duty and breach of implied contract the plaintiff executrix seeks to recover damages for the alleged failure of the defendant insurance agent to obtain uninsured motorist coverage for the plaintiff's decedent.
The essential facts giving rise to this claim have been stipulated to by the parties. John Fiori, a Connecticut resident, was killed instantly in a one-car motor vehicle accident which occurred in the parking lot of a motel in Pont-Rouge, Quebec, Canada, when a resident of Quebec left the travel portion of the road and struck Mr. Fiori. At the time of the accident Mr. Fiori was on vacation in Quebec for the purpose of snowmobiling. His CT Page 11208-D snowmobile was insured and garaged in Vermont. The automobile operated by the tortfeasor was registered, garaged and insured in Quebec, Canada.
Quebec law has abolished personal injury actions for victims of bodily injury and death. In its place is a government fund created to compensate victims and their survivors. According to a very detailed scheme, that fund imposes a cap on the amount of compensation payable to victims and their survivors. Pursuant to that scheme, the plaintiff in this case received a payment of approximately $220,000 (Canadian). Compensation under the Canadian plan "stands in lieu of all rights and remedies by reason of bodily injury and no action in that respect shall be admitted before any court of justice."
Having received payment from the Canadian fund, the plaintiff initiated the present case alleging that the defendant insurance agent failed to obtain uninsured motorist coverage for the benefit of John Fiori. Had such coverage been in effect the plaintiff claims that she could recover underinsured benefits representing the difference between the approximately $200,000 received from the Canadian fund and the amount of fair, just and reasonable damages recoverable by the estate for the wrongful death of the decedent. The complaint implies, and the plaintiff stated at oral argument, that the total value of such uninsured coverage might be as much as 1.5 million dollars.
The defendant's motion for summary judgment requires consideration of the arcane and sometimes opaque world of conflict of laws. Defendant's motion is based on the following syllogism. Canadian law has abolished personal injury and wrongful death claims. In order to prevail in the present case, the plaintiff has to demonstrate that even if the defendant had obtained uninsured coverage, she would have been legally entitled to recover under such policy. If Canadian law is applied in this case the plaintiff would not be entitled to such recovery because Canadian law has abolished wrongful death actions. Consequently, the defendant argues that under applicable choice of law principles Canadian law should be applied when the situs of the accident and the domicile of the tortfeasor is Quebec.
In order to resolve the defendant's claim, it is necessary to determine whether, under applicable choice of law principles, Canadian or Connecticut law would apply to the hypothetical underinsured claim that would have been brought by the decedent's CT Page 11208-E estate had the decedent's policy provided such coverage. The threshold issue is whether contract or tort choice of law principles guide this analysis. The two most recent decisions on this issue; O'Connor v. O'Connor, 201 Conn. 632 (1986) ("O'Connor"); and Williams v. State Farm Mutual Automobile Ins.Co., 229 Conn. 359 (1994) ("Williams"); have indicated, without expressly holding, that tort choice of law principles should guide the court's analysis when evaluating an uninsured motorist claim brought by a Connecticut resident and arising out of personal injuries incurred in a foreign jurisdiction.[1] The decision in this case is likewise determined by reference to tort choice of law principles.
Having concluded that tort and not contract principles determine which law to apply to this matter, the next question is whether the doctrine of lex loci delicti (the place of injury determines the jurisdiction whose law applies) or the Restatement (Second) Conflict of Laws "most significant relationship test", should guide the court's analysis. In O'Connor, 201 Conn. 648, the Court abandoned "categorical allegiance" to doctrine of lex loci delicti, noting that "there are circumstances in which strict application of the lex loci delicti rule frustrates the legitimate expectations of the parties and undermines and important policy of the state. Id., at 637. In Williams,229 Conn. 370, the Court "recognized that, in certain circumstances in which the traditional doctrine does not apply, the better rule is the analysis contained in the Restatement (Second) of the Conflict of Laws." Because the O'Connor and Williams courts both applied the Restatement analysis and noted that "we are not wholeheartedly committed to application of lex loci as the sole approach to choice of law in all tort cases"; O'Connor v.O'Connor, supra, 638; this court concludes that the appropriate analysis in this case involves application of the Restatement principles.
As described in O'Connor and Williams, Restatement § 145 sets forth the contacts of each jurisdiction that are factors in determining the choice of law. These contacts include: (a) the place of injury; (b) the place where the conduct causing the injury occurred; (c) the domiciles of the parties; and (d) the place where the relationship, if any, between the parties is centered.
In the present case the injury and conduct causing the injury occurred in Quebec. Thus factors (a) and (b) point toward CT Page 11208-F the application of Quebec law. These factors, according to the Restatement, are the most significant in determining which law to apply. "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of applicable law." Comment (e), Restatement § 145. Application of factor (c) in this case is inconclusive because one party resides in Canada, the other in Connecticut. Finally, section (d) is "irrelevant because there was no relationship between the parties other than the accident." Williams, supra, 373.
Although application of § 145 points toward choice of Canadian law, the O'Connor court emphasized that, "[t]he guiding principles of the Restatement . . . encourage a searching case-by-case contextual inquiry into the significance of the interests that the law of competing jurisdictions may assert in particular controversies." 201 Conn. at 658. § 6 of the Restatement sets forth the interests that are to be weighed in selecting a choice of law. § 6(2)(b) requires consideration of the "relevant policies of the forum. § 6(2)(c) requires consideration of the "relevant policies of other interested states and the relative interests of those states in the determination of the particular issue." Finally, § 6(2)(e) addresses the "basic policies underlying the particular field of law." These same three factors were identified and weighed in O'Connor, 201 Conn. 650-651; and Williams, 229 Conn. 373-75.
The first factor to be considered is the relevant policy interest of the forum state, Connecticut. Connecticut has a significant interest. The purpose of the uninsured motorist statute is to permit the injured party to receive full, fair and reasonable compensation for the injury suffered. "The purpose of underinsured motorist coverage is to protect the named insured . . . from suffering an inadequately compensated injury." TravelersInsurance Co. v. Kulla, 216 Conn. 390, 398 (1990). "Our uninsured motorist statute is remedial in nature and designed to protect people injured by uninsured motorists." Williams,201 Conn. at 373. "Connecticut has a strong interest in assuring that the plaintiff may avail herself of the full scope of remedies for tortious conduct that Connecticut law affords . . . and of providing the more seriously injured the opportunity to seek true redress in a judicial forum." O'Connor, 201 Conn. at 657 (internal citations and quotations omitted).
With respect to the interests of Quebec, they are "similar CT Page 11208-G to that of our own no-fault insurance act: assurance to automobile accident victims of access to expeditious and adequate financial compensation, and assurance to automobile owners of access to insurance at reasonable premiums." Id., at 654;Williams, 229 Conn. at 374. As the Williams' court noted, that policy is implicated when the accident occurs in the foreign jurisdiction and the tortfeasor is a resident of that jurisdiction.
The question presented in this case is admittedly a close one. Factually, this case is more analogous to Williams than toO'Connor. The Restatement cautions, however, against, a mechanical application of choice of law rules. "It is the significance, and not the number of § 145 contacts that determines the outcome of the choice of law inquiry under the Restatement approach." O'Connor v. O'Connor, 201 Conn. at 652. In the present case, although there are more contacts with Quebec than Connecticut, this court is persuaded that the fundamental purpose of Connecticut tort law of providing full, fair and just compensation to a victim injured by an uninsured motorist;Travelers Insurance Co. v. Kulla, supra; far outweighs the interests of Quebec in this matter. First, it is significant that this case does not explicitly involve a claim for uninsured benefits. Rather, it is in effect a claim of insurer malpractice. The uninsured motorist claim is raised only to the extent that a court or jury would have to evaluate whether, if the decedent had such coverage, he would have been legally entitled to recover under such a policy. Thus, the concerns about the effect of such an oblique, sub-terra determination on the interests of the Quebec system of compensation are remote at best. The Quebec interest in maintaining low insurance premiums and reducing litigation; William v. State Farm Insurance Co., supra, is only marginally implicated in a case such as this, in which the fact-finder's ultimate decision concerning the liability of the defendant insurance broker, rests on a subsidiary and perhaps unarticulated determination of a hypothetical uninsured motorist claim.
At the same time, the plaintiff in this case has a substantial interest in obtaining full, fair and adequate compensation for the untimely loss of her husband. Chase v.Fitzgerald, 132 Conn. 461 (1946). The plaintiff's allegations, which must be viewed in the light most favorable to the plaintiff for the purposes of this summary judgment motion; Cummings Lockwood v. Gray, 26 Conn. App. 293, 296-97 (1991); allege a CT Page 11208-H breach of duty and breach of contract resulting in substantial economic injury to her and his estate. Under these circumstances, the plaintiff's attempt to obtain compensation for the alleged defaults of the defendant should not be barred by the mere fortuity that the accident occurred in Quebec. O'Connor v.O'Connor, 201 Conn. at 645-46 ("[A]pplication of the lex loci delicti doctrine makes determination of the governing law turn upon a purely fortuitous circumstance: the geographic location of the parties' automobile at the time the accident occurred.") Whether or not summary judgment should enter for the defendant in this case should not ultimately turn on the mere happenstance of the plaintiff's death having occurred in Canada.
Additionally, and "[m]ore importantly, however, Connecticut has a strong interest in assuring that the plaintiff may avail herself of the full scope of remedies for tortious conduct that Connecticut law affords. Connecticut's no-fault act serves similar purposes to Quebec's Automobile Insurance Act, with one important exception: unlike the Quebec act, the Connecticut act embraces the policy of `providing the more seriously injured the opportunity to seek true redress' in a judicial forum. To deny the plaintiff a cause of action in this case would frustrate this important purpose of the Connecticut no-fault statute." Id., 657. (Internal citations and quotations omitted).
Accordingly, I conclude that under the particular facts of this case the interests of the plaintiff and Connecticut substantially outweigh the interests of the foreign jurisdiction, requiring the application of Connecticut law. Therefore, the defendant's Motion for Summary Judgment is denied.