[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MOTION FOR SUMMARY JUDGMENT
This matter involves an automobile accident which occurred in Connecticut allegedly causing injuring to the plaintiff, Jorge Maldonado, a Connecticut resident. The vehicle involved was rented in New Jersey from a New Jersey car rental company, GRM Enterprises [hereinafter GRM]. The vehicle was rented by CT Page 9803 defendant Andrew Greenman, who gave a New Jersey address. At the time of the accident, the vehicle was being operated by defendant Manny Lannefranque, as the "agent, servant and/or employee of the defendant, Andrew Greenman, with the permission and consent of the defendant, Andrew Greenman."[1] Nevertheless, Mr. Lannefranque was not an "authorized driver" within the meaning of the rental agreement. The above-stated facts are not in dispute.
Defendant's motion claims that summary judgment is appropriate because the plaintiff's action is barred by Connecticut law. Defendant responds that New Jersey law is applicable in this case. It is clear that Connecticut law would bar the action while New Jersey law would not.
 [S]ummary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' Practice Book § 384; Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991). A motion for summary judgment is an appropriate motion to resolve a choice of law issue. Howe v. Stuart Amusement Corp., 5 Conn. L. Rptr. 350, 351 (January 13, 1992, Hennessey, J.)
Brunow v. Burnett, et al., 1994 Ct. Sup. 3680, CSCR (1994), CV930062060 (Walsh, J.)
General Statutes § 14-154a provides
 Liability of owner for damage caused by rented or leased car. Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner.
Connecticut courts have interpreted this section to preclude liability in a situation wherein damage is caused by an "unauthorized" driver. Pedevillano v. Bryon, 231 Conn. 265,648 A.2d 873 (1994). In the present case, the rental agreement lists no additional authorized drivers, nor any request for authorization for additional drivers. The rental agreement states that the vehicle shall not be driven or used ". . . by anyone CT Page 9804 other than you or the additional drivers listed. . .".[2]
Unlike the Connecticut statute, New Jersey has adopted the "initial permission rule." This rule has been interpreted to provide coverage where the initial renter has given permission for use of the automobile even when said permission is in contravention of a rental agreement's provision forbidding unauthorized drivers. Williams v. American Home Assur. Co., etal., 121 N.J. Super 351 (1972). If this were this a contract action, as plaintiff asserts, New Jersey law would apply, and plaintiff's action would not be barred. This case involves allegations of personal injury caused by an automobile accident. As such, it sounds in tort. See Bosler v. National Car Rental,1993 Ct. Sup. 1479, 8 CSCR 275 (1993), No. 517660 (Hurley, J.);Kolpa-Acker v. Hertz Rent-a-Car, et al., 1995 Ct. Sup. 8850,15 CLR 9 (1995), No. CV93-0064111 (Pickett, J.).
Plaintiff argues that under applicable choice of law rules, Connecticut law should apply whether his complaint is founded upon either a contract or a tort theory. The defendant contends that, because this action sounds in tort, Connecticut law applies under the test set forth in the Restatement Second Conflict of Laws. According to the Restatement, the two most significant factors in determining which state's tort law to apply are the place of injury and the place where the conduct causing the injury occurred. If these two factors point to one state, that state will usually be the state of the applicable law. Williamsv. State Farm Mutual Automobile Ins. Co., 229 Conn. 359, 372,641 A.2d 783 (1994). In this case, Connecticut is the place of injury and the place where the conduct causing the injury occurred. Other factors included in Section 145 of the Restatement are the domiciles of the parties and the place where the relationship, if any, between the parties is centered. Here, domicile is inconclusive as plaintiff is a Connecticut resident and defendant is a business domiciled in New Jersey. The relationship of the parties is irrelevant because there was no relationship between the parties other than the accident. See Williams, supra, 372-3.
In O'Connor v. O'Connor, 201 Conn. 632, 519 A.2d 13 (1986), the Supreme Court rejected previous adherence to the doctrine of lex loci delicti and instead adopted the "most significant relationship" test in accordance with the principles of the Restatement Second Conflict of Laws:
 [t]he rights and liabilities of the parties with respect to an issue are determined by the local CT Page 9805 law of the state which, with respect to that issue, has the most significant relationship to the occurrence and to the parties under the principles [in the Restatement] stated in § 6.
Id. 650.
Section 6 of the Restatement provides:
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protections of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
Id. 650-51.
Despite the fact that Connecticut is the state where the plaintiff was injured and where the accident occurred, the inquiry does not end based on these factors alone.[3] O'Connor did not choose to apply the law of the foreign jurisdiction even though, as in the present case, the plaintiffs were injured there and the tortious conduct occurred there. Id. 652. These factors were weighed against the fact that both plaintiffs were Connecticut domiciliaries and their relationship was centered in Connecticut. Id. 652. Despite the fact that the accident in the present case occurred in Connecticut and involved a Connecticut resident, the place of business of the defendant is New Jersey. CT Page 9806 Thus, there is no identity of domicile to "center" the relationship of the parties in Connecticut as was the case inO'Connor. The O'Connor court would have found the choice of Connecticut law "more problematic", and given more weight to the foreign jurisdiction if, as here, the accident had involved a foreign resident. Id. 658. The court found it significant that both plaintiff and defendant were Connecticut domiciliaries. Id. 657. The court characterizes these competing factors as a "standoff" necessitating the
. . . need to recall that it is the significance, and not the number, of § 145(2) contacts that determines the outcome of the choice of law inquiry under the Restatement approach. As the concluding sentence of § 145(2) states, `[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue.' In order to apply the § 6 guidelines to the circumstances of the present case, we must, therefore, turn our attention once more to the particular issue whose disparate resolution by two relevant jurisdictions gives rise to the conflict of laws. Specifically, we must analyze the respective policies and interests of Quebec, the place of injury, and Connecticut, the forum state, with respect to the issue of whether the plaintiff should be allowed to recover damages from the defendant in a private cause of action premised on the defendant's negligent operation of an automobile. In the process of that analysis, we must evaluate the relevance of each jurisdiction's § 145(2) contacts to this particular controversy.
Id. 652-53.
Two factors considered by the O'Connor court which militated against applying the law of the foreign jurisdiction were that both victim and tortfeasor were Connecticut residents, (in this case, the victim is a Connecticut resident and the defendant is a New Jersey company) and that the vehicle was neither insured nor registered in Quebec, the foreign jurisdiction, (here, the vehicle is both registered and insured in New Jersey, the foreign jurisdiction). These "contacts" are not insignificant in the context of this case. The O'Connor court focuses on the result of reconciling competing state policies with regard to which contacts are significant. The O'Connor court notes that the application of Quebec law would `. . . bestow upon temporary visitors injured in Connecticut all the relief which [Connecticut CT Page 9807 law] affords, but deny that same relief to Connecticut residents injured in Quebec.' Id. 656. (Citation omitted, brackets in original). The O'Connor court "deplores" this "anomalous" result. Id. 656.
If the plaintiff herein were correct in asserting that Connecticut law should apply, and if all the facts of this case were identical except that it was a New Jersey resident who was injured and brought suit, application of Connecticut law would deny a New Jersey domiciliary a right that would be available under New Jersey law. Using the same analysis, if the site of the injury and the place where the conduct occurred were New Jersey, and a Connecticut domiciliary were injured, the application of New Jersey law would give a Connecticut domiciliary the benefit of New Jersey law — a benefit denied a New Jersey domiciliary in the same situation in Connecticut.
The contacts with New Jersey that exist in this case are significant when viewed in light of the competing policies of the two jurisdictions. It is the opinion of this court that O'Connor
would not endorse a resolution which produces the "anomalous" result specifically discredited in that case.
Accordingly, defendant's motion for summary judgment is denied insofar as Connecticut law is not applicable and does not bar plaintiff's action against defendant.
Dunnell, J.