[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE
In this case the defendant husband and his wife who are domiciled in Connecticut took a trip to Florida. The complaint CT Page 11438 indicates that on October 7, 1994, while operating a vehicle owned by the co-defendant, Hertz Corporation, the defendant husband lost control of the car which overturned, causing serious injury to his plaintiff wife. She sued her husband in negligence and also sued the Hertz Corporation, claiming to have suffered "permanent, severe, and disabling injuries."
Counsel for defendant husband filed an answer and special defense which claims that the plaintiff's action is barred by the provisions of § 627.737 of the statutes of Florida. That state as part of its insurance regulatory scheme provides that in any tort case against the operator of a motor vehicle with respect to which "security" has been provided by specified statutory provisions, a plaintiff can recover damages for what may be described as non-economic injury, pain and suffering, et cetera, "only in the event that the injury . . . consists in whole or in part of
 (a) significant and permanent loss of an important bodily function
 (b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;
(c) significant scarring or disfigurement;
(d) death."
The plaintiff has now filed a motion to strike the special defense claiming that under the principles set forth in O'Connorv. O'Connor, 201 Conn. 632 (1986) regarding appropriate choice of law the Florida statute cannot be plead as a special defense in our state. AS in the common law demurrer the pleading of the nonmoving party must be given that reading which is most favorable. Amodio v. Cunningham, 182 Conn. 80 (1980) but although the motion to strike admits well-pleaded allegations, it may not be opposed by facts outside the attacked pleading.Kilbride v. Dushkin Publishing Group, 186 Conn. 718, 719
(1982).
This case is a difficult one, at least to the court, because the facts that would be dispositive lie somewhere between the factual scenario set forth in O'Connor v. O'Connor, supra, and the more recent case of Williams v. State Farmer's Mutual
CT Page 11439Automobile Ins. Co., 229 Conn. 359 (1994).
In O'Connor the court abandoned the so-called lex loci delicti rule which dictated that the substantive rights and obligations rising out of a tort controversy are determined by the law of the place where the injury occurred. The court adopted the principles set forth in the Restatement Second Conflict of Laws — the "significant relationship analysis." A court must examine § 145 which lists the contacts of each jurisdiction which are the factors that determine the choice of law under § 6 of the Restatement. In O'Connor, two Connecticut domiciliaries, husband and wife, were involved in a one car accident. The plaintiff wife underwent hospital treatment in Quebec and suffered continuing disabilities upon returning home to our state. The plaintiff sued her husband in negligence. The action was not barred in Connecticut law under then existing § 38-323 of the General Statutes because that statute allowed suit by the victim of an auto accident causing serious physical or economic injury. However, under Quebec law, the action could not have been brought because its statutes provided for government funded compensation. The defendant moved to strike finding the law of Quebec should govern, the trial court agreed but the Supreme Court reversed.
The O'Connor court, in a tort action, basically characterized the task before a court analyzing these matters under § 6 of the Restatement as one of weighing the respective policies and interests of the place where the accident occurred against the policies and interests of the place where suit was brought, 201 Conn. at p. 651; that jurisdiction, using this test, with the "most significant relationship to the occurrence"201 Conn. at p. 648 will have its law applied. The court recognized the importance to Quebec of having its standards of motor vehicle conduct govern civil and criminal liability. It would be hard to imagine a case where this concern would not be the paramount factor. But the court went on to note that the Quebec statute before it expressed no interest in regulating the defendant's conduct but "rather limits the liability exposure to which his conduct subjects him." Id. page 654. Referring to a California case, the court noted its reasoning that limitations on damages are concerned not with how people behave but the manner in which they should be compensated and: "The state of the place of wrong has little or no interest in such compensation when none of the parties reside there." Reich v. Purcell, 432 P.2d 727, 731, (Cal. 1986). CT Page 11440
In this court's opinion, the most significant language in theO'Connor case in regards to weighing the interests and paying proper regard to the policies and concerns of the jurisdiction where the accident occurs appears at page 655:
 The policies behind Quebec's no-fault rule would not be substantially furthered by application of Quebec law in the circumstances of the present case. In this case, neither the victim nor the tortfeasor is a Quebec resident. There is no evidence on the record that the vehicle involved in the accident was insured or registered in Quebec. . . . Rather, the record indicates that the parties were merely `passing through' the province, and that the location of the accident was fortuitous. Clearly the goal of reducing insurance premiums in Quebec not furthered by application of the Quebec no-fault act to an accident involving only nonresidents of Quebec, in an automobile that was not insured in the province. Quebec's interest in alleviating the administrative and judicial costs of automobile accident litigation is in no way implicated when, as in this case, a nonresident brings suit against another nonresident in a foreign jurisdiction.
It was on the basis of all this that the court concluded that "Quebec's status as the place of injury is not a significant contact for purposes of choice of law inquiry." Id. at page 656. But that did not end the matter since the court still had to determine whether Connecticut's contacts with the litigation gave it a legitimate interest in applying its law to the controversy. The court then addressed that issue. The court noted that both parties resided in our state. To deny the plaintiff a cause of action here would have frustrated an important purpose of our then existing no fault statute — this is especially so because the alleged consequences of the injury, including medical expenses and lost income, had been borne in Connecticut. The court said our state thus had a strong interest "in assuring that the plaintiff may avail herself of the full scope of remedies for tortious conduct that Connecticut law affords." Id. p. 657. Given the lack of policy reasons to apply Quebec law and our state's CT Page 11441 strong interest in having its law applied the court decided Connecticut law should apply. But the court then ended its discussion by underlying the difficult task imposed by the adoption of the Restatement standard. Everything depends on the circumstances of the particular case thus there is no overriding precedential value to any case except the admonition — use the Restatement. In other words, if any one of the factors changes the result could change and no guidelines are or perhaps can be given as to the relative importance of the variable factors — e.g. residency concerns, insurance considerations, et cetera.
It is true that the court went so far as to say in dicta, id. P. 658, that even given all the policy factors it had just analyzed Quebec law would have been entitled to greater weight if the accident had involved a Quebec resident — this despite the fact that the Quebec law had nothing to do with conduct, the car was not registered and insured in Quebec and the expenses for the plaintiff were born in Connecticut. But certainly, the court did not mean to say it was replacing the immutable principle of lex loci delicti with another immutable principle — if both of the parties live here our law applies.
In Williams the plaintiff was operating his car in New Windsor, New York when a vehicle owned by the tortfeasor negligently struck the plaintiff's vehicle. The tortfeasor had a California operator's license and his vehicle was registered in New York. At the time of the accident, he was insured for the minimum $10,000 under New York law. The tortfeasor's carrier exhausted its liability coverage by virtue of this $10,000 payment to the plaintiff. The plaintiff was insured by the defendant State Farm under a policy that provided uninsured motorist coverage in the amount of $25,000 per person and $50,000 per accident. The plaintiff sought $15,000, representing the difference between his uninsured motorist coverage and the tortfeasor's policy limit. Arbitration was pursued and the defendant denied liability claiming that the plaintiff was entitled under the policy only to damages that he was "legally entitled to collect" and that New York law governed his entitlement. Under that state's no fault law, the defendant claimed the plaintiff could not maintain an action against the tortfeasor because he had not sustained either "serious injury" or basic economic loss in excess of $50,000 — unless either of these criteria were met there could be no right of recovery for non-economic loss. § 5104 of N.Y. Insurance Law, McKinney (1985). CT Page 11442
Although the plaintiff was domiciled in our state, the court first noted that unlike the situation in O'Connor the tortfeasor was not domiciled in Connecticut and no relationship existed between the parties other than the accident. It then discussed the primary considerations leading it to apply New York law. The court recognized that our state has an interest in protecting its residents with uninsured motorist coverage as the plaintiff argued. But the court went on to note that the plaintiff had received no fault benefits already. Connecticut had no fault at the time of this action and New York like our state was noted to have a comprehensive scheme of insurance coverage. If the case were to be decided under New York law the plaintiff would receive the benefits as well as suffer the limitations of its system whose no fault insurance minimums happened to be substantially higher than ours, id p 374. The critical factors for the court were however what it considered New York's strong interests: ". . . the accident occurred in New York and the plaintiff received his preliminary care in New York. Moreover the tortfeasor's vehicle was registered in New York. Application of the law of a state other than New York in such circumstances could interject an element of uncertainty into New York insurance policies. Such a result could have a deleterious effect on New York's goals of reducing litigation and the cost of premiums in New York," id pp. 374-375.
Besides the court said the New York statute can be easily applied in our court.
Using the considerations referred to in O'Connor andWilliams the court will now weigh the various policy considerations favoring either the application of Florida or Connecticut law. If Florida law should apply the motion to strike should not be granted. If Connecticut law applies then the motion should be granted. First the court will discuss the reasons that favor the application of Florida law. The defendant attempts to allude to various factors which would weigh in favor of applying Florida law following the discussion and conclusion reached inWilliams. One important consideration is whether or not preliminary treatment for the injuries caused by the accident took place in Florida. Even more importantly under Williams and also as reflected in dicta in O'Connor, despite the fact that both parties in that case were domiciled in Connecticut, much consideration should be given to Florida policy and interests if the vehicle was registered and insured in that state. Under such circumstances applying non-Florida law could interject a note of CT Page 11443 uncertainty into that state's insurance policies and thereby have a harmful effect on Florida's goals of reducing litigation and the cost of premiums in that state, see Williams at 229 Conn. at page 375. This consideration could be even more important where, as here, rental vehicles are involved. Insofar as in a state like Florida numerous vehicles are rented with the expectation that they are to be driven in that state insurance policies covering these vehicles would be written with the laws of Florida in mind. To have Connecticut law govern a tort action arising from the operation of such a vehicle in Florida would contravene the expectations of both insurer and lessor, Petersv. Peters, 634 P.2d 586, 594 (Haw. 1981). To put it another way rental rates for these cars may very well be kept down because the cost of the insurance component is relatively low due to the expectation that Florida's no fault law would be controlling. It does not seem quite fair that out of state tourists from Connecticut or wherever can go to Florida, take advantage of low rental car rates because of the operation of Florida law, then once they are injured go back to their home state and bring a tort action while vigorously protesting the application of Florida statutes which they were perfectly willing to benefit from earlier in the form of lower car rental fees.
If these considerations could properly be taken into account in deciding the present motion, they would strongly favor the application of Florida law here. It is true that the Florida no-fault law has nothing to do with regulating conduct on Florida highways but the discussion in O'Connor and Williams
especially in reference to insurance concerns makes clear that that factor is not the only basis on which it can be held that non-Connecticut law should apply.
There are competing considerations, however, that favor the application of Connecticut law. For one thing, both parties are domiciled in Connecticut. That factor standing alone should not be controlling or our state would be adopting a new diktat to replace a diktat we thought was being abandoning — lex loci delicti. The domiciliary relationship is important, however, in light of the fact that it underscores the marital relationship of the parties — thus this case is not like Williams where the only contact between the parties was the fact that they had been involved in an accident. If the parties involved in the accident have a relationship pre and post dating their Florida trip, enforcement of Florida's rules regarding non-economic damage recovery could well place a strain on an instate relationship CT Page 11444 Connecticut has an interest in protecting and nurturing. And our state by repealing no-fault in effect was willing to recognize the deleterious effect non-economic damages, pain and suffering have on people's lives and relationships.
In that regard the defendant's argument that Connecticut once had no fault legislation cannot carry much weight since the point is our state does not have such legislation now — it was repealed.
But even given the importance of the just mentioned considerations Florida's law does not leave the plaintiff with no access to court like the Quebec statute the O'Connor court refused to apply. And like the statute in Williams the Florida statute does not at this point even foreclose the possibility of recovery for non-economic injury as long as the criteria of Florida law is met. This to some extent allays concerns about the weight that should be accorded to the fact that a husband and wife are involved, domiciled in our state.
The difficulty the court has is ruling on this motion, however, is that resolution of the issues it presents is fact based and cannot be decided based on the pleadings. Nothing in the pleadings indicates how much if any money was spent for medical costs in the state of Florida. The court can guess that the vehicle was rented from the co-defendant Hertz in Florida but cannot reach that conclusion from the pleadings. Also perhaps it is not fair for the court to make pat assumptions without any evidence being presented about insurance rates and the effect on insurance rates in a conflict of law context. This is especially so in light of the fact that the question of insurance costs has assumed a much greater role in this decision than in oral argument. The co-defendant Hertz Inc. has not filed any motion or made any argument concerning this matter — can the court even conclude that Hertz is not a self-insurer? Anything is possible and the pleadings are no help on this or other questions. If a motion to strike is not a proper vehicle to resolve this matter, is a motion for summary judgment in order? The difficulty is that motions for summary judgment are supposedly not properly directed towards special defenses so that the only way to address the conflict of law question raised would be by way of a "speaking demurrer". But that has a long history of common law condemnation despite its usefulness when a motion for summary judgment will not lie. The parties should have this matter resolved before trial however, if they so desire, and a possible device would be CT Page 11445 the use of a motion in limine. The court would be willing to schedule a conference with counsel to try to select a procedural mechanism to decide these claims. The court does not intend to prejudge the final resolution of the issue before it by its action in denying the motion to strike.
CORRADINO, J.