NORTHERN TANKERS (CYPRUS) LTD., Plaintiff,

v.

Adam BACKSTROM, et al., Defendants.

No. 3:95 CV 1217(GLG).

United States District Court, D. Connecticut.

July 29, 1996.

---

Healy & Baillie by W. Cameron Beard, John D. Kimball, New York City, for Plaintiff.

Davis Polk & Wardwell by Robert F. Wise, Jr., New York, NY, for Defendants.

## OPINION

GOETTEL, District Judge.

Defendants Adam Backstrom ("Backstrom") and Magnus Lindholm ("Lindholm") move to dismiss the seventeenth through nineteenth claims in the Second Amended Complaint filed by plaintiff Northern Tankers (Cyprus) Ltd. ("Northern Tankers") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion (Document # 161) is granted in part and denied in part.

## BACKGROUND

Familiarity with our previous decisions and the decisions of Magistrate Judge Smith is assumed. In the seventeenth, eighteenth, and nineteenth claims, Northern Tankers seeks to hold Backstrom, Lindholm, and Lexmar Liberia [1] liable in damages for failing to produce documents during discovery in a prior action against Lexmar Liberia.

In October 1990, Northern Tankers filed an action against Lexmar Liberia and Starlux Corporation seeking damages based upon the breach of an oral charter party. The case was filed in the United States District Court for the Southern District of New York, and was assigned to Judge Sprizzo. In October 1990 and February 1991, Northern Tankers served document requests upon Lexmar Liberia. Lexmar Liberia, through counsel,

---

1. Lexmar Liberia is in insolvency proceedings and has not appeared in this action. We therefore do not discuss the validity of Northern Tankers' claims against Lexmar Liberia, and rather address only those claims against its directors, Backstrom and Lindholm.

responded to those requests. In January 1992, Judge Sprizzo referred the case to arbitration. The liability and damages issues were bifurcated, and in March 1994, the arbitrators issued a partial final award in Northern Tankers' favor on the issue of liability. In April 1995, the arbitrators issued a final award of damages of approximately $11 million. Northern Tankers then applied to confirm the arbitration award, and the award was confirmed by summary order dated March 25, 1996.

In June 1995, Northern Tankers filed the instant action against Lexmar Liberia and 48 other defendants, as alleged alter egos of Lexmar Liberia, seeking to recover from these alter egos the judgment entered against Lexmar Liberia. In the course of discovery concerning this litigation, Northern Tankers was granted an order permitting it access to warehouse storage space containing the files of Lexmar Liberia. Northern Tankers alleges that it discovered, for the first time in October 1995, Lexmar Liberia corporate documents that it claims should have been produced to it in 1990 and 1991 pursuant to discovery requests in the New York action. Northern Tankers alleges that these documents clearly establish Lexmar Liberia's liability to Northern Tankers, and if they had been produced pursuant to the original discovery requests, the New York litigation and arbitration would have been significantly curtailed.

Northern Tankers now brings this action seeking, *inter alia,* damages for fraud (seventeenth claim), civil conspiracy (eighteenth claim), and negligence (nineteenth claim) (collectively the "non-production claims") against Backstrom and Lindholm based on these alleged discovery defaults by Lexmar Liberia in the New York action. While neither Backstrom nor Lindholm was a party to the New York action, Northern Tankers seeks to hold them liable as directors and owners of the corporation for their alleged individual tortious activity. Although the arbitration award was in Northern Tankers' favor, and it has been confirmed by Judge Sprizzo, Northern Tankers asserts that delay caused by defendants' failure to produce these documents prevented it from recovering its damages from Lexmar Liberia prior to its insolvency. Northern Tankers also asserts that unnecessary costs and legal fees were incurred as a result of the non-production of these documents.

## DISCUSSION

### I. Res Judicata

Defendants first argue that basic principles of res judicata or collateral estoppel preclude Northern Tankers from holding Lexmar Liberia liable for the non-production of these documents. In his March 25, 1996 order confirming the arbitration award, Judge Sprizzo wrote, "given the colorable legal arguments raised by Lexmar, Northern Tankers' request for sanctions shall be and hereby is denied." Defendants argue that Northern Tankers is precluded from litigating their non-production claims here because these claims were previously litigated and decided by Judge Sprizzo. *See Zoriano Sanchez v. Caribbean Carriers Ltd.,* 552 F.2d 70, 72 (2d Cir.) (plaintiff precluded from pressing "the same claim, involving the same parties and arising out of the same circumstances, before the district court in New York as they did before the district court in Puerto Rico"), *cert. denied,* 434 U.S. 853, 98 S.Ct. 168, 54 L.Ed.2d 123 (1977). Accordingly, Judge Sprizzo's judgment bars Northern Tankers' non-production claims against Lexmar Liberia and everyone in privity with Lexmar Liberia. *See Nevada v. United States,* 463 U.S. 110, 129, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983) (res judicata binds the parties and "those in privity with them" to a final judgment on the merits by a court of competent jurisdiction). Defendants also argue that even if Judge Sprizzo's judgment does not have res judicata effect, Northern Tankers should be collaterally estopped from relitigating its non-production claims.

This seemingly convincing argument fails for at least one important reason: Judge Sprizzo did not decide this issue. The sanctions Judge Sprizzo denied in his March 25, 1996 order were sanctions requested by Northern Tankers in connection with Lexmar Liberia's filing in May 1995 of a cross-motion to vacate in response to Northern

Tanker's petition to confirm the arbitration award.[2] Northern Tankers requested sanctions in connection with that cross-motion, and the issue was briefed to Judge Sprizzo in Lexmar Liberia's "Memorandum of Law of Lexmar Corporation of Liberia in Support of its Motion to Vacate the Arbitration Awards" and in Northern Tankers' "Memorandum of Plaintiff in Opposition to Defendant's Cross-Petition to Vacate Arbitration Awards.".

Defendants' confusion apparently stems from Northern Tankers' additional request in December 1995 to file a motion for sanctions against Lexmar Liberia and/or its counsel with respect to the withholding of documents at issue here. The parties met with Judge Sprizzo prior to filing such a motion, and in fact agreed to a briefing schedule for such a motion, but the motion was never submitted to the court. Defendants nonetheless argue that Judge Sprizzo's March 25, 1996 order denying sanctions in fact denied sanctions for the non-production of these documents.

Judge Sprizzo's denial of sanctions in his order confirming the arbitration award again stated, "given the colorable legal arguments raised by Lexmar, Northern Tankers' request for sanctions shall be and hereby is denied." Northern Tankers never submitted the motion and thus clearly did not "request" these sanctions. Judge Sprizzo's reference to "colorable legal arguments" also clearly refers only to the motion for sanctions related to Lexmar Liberia's cross-motion to vacate. Defendants assert that in correspondence sent to Judge Sprizzo prior to the pre-motion conference, both parties presented legal argument regarding the application of sanctions. During the conference, however, Judge Sprizzo expressed his confusion and annoyance with this correspondence, and

made very clear his opinion that this issue was completely unrelated to the issue of whether he would confirm the arbitration award. Judge Sprizzo also made clear his opinion that there was no such outstanding motion for sanctions, and that one would have to be made before he would consider the issue. We therefore find that Judge Sprizzo did not decide this issue.[3] We also reject defendants' general argument that any non-production claims were merged in the final judgment and cannot be the subject of another action. As is discussed below, we find plaintiff states a valid cause of action that is not precluded from litigating now.

## II. Choice of Law

■ The non-production claims are state-law causes of action subject to supplemental jurisdiction under 28 U.S.C. § 1367. Their claims, therefore, must be decided under Connecticut choice-of-law rules. *See Rogers v. Grimaldi,* 875 F.2d 994, 1002 (2d Cir.1989); *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313, 316 (2d Cir.1983), *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984). Connecticut's choice-of-law rules for tort claims, however, are less than clear.

The Connecticut Supreme Court's watershed opinion in this area is *O'Connor v. O'Connor,* 201 Conn. 632, 519 A.2d 13 (1986), in which the Court announced its willingness to depart from the doctrine of lex loci delicti:

> This court has traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delicti. Recently, however, we have recognized that there are circumstances in which strict applica-

---

**2.** While defendants argue that the request for these sanctions was never formalized in a motion, Lexmar Liberia never appears to have protested that these sanctions were not sufficiently requested. Indeed, Lexmar Liberia specifically addressed Northern Tankers' request for these sanctions in one of its briefs. On page 16 of Lexmar Liberia's May 19, 1995 memorandum of law in support of its motion to vacate the arbitration awards, its heading for two pages worth of argument is "NORTHERN'S REQUEST FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND 28 U.S.C. § 1927 IS GROUNDLESS."

**3.** Defendants' counsels' erroneous position may be due to the fact that they were not involved in the New York litigation and thus were not intimately familiar with it. Following the filing of their brief on this motion, however, they were informed by Northern Tankers' counsel of the cause of their confusion and urged to amend their papers with respect to their res judicata argument. Defendants' counsel refused, and we were thus presented with this argument.

tion of the lex loci delicti rule frustrates the legitimate expectations of the parties and undermines an important policy of this state. In such circumstances, we have refused to apply the doctrine.... Our decision in *Simaitis* [*v. Flood,* ] [182 Conn. 24 [437 A.2d 828] (1980) ] has rightly been interpreted as a signal that we are not wholeheartedly committed to application of lex loci as the sole approach to choice of law in all torts cases.

201 Conn. at 637–38, 519 A.2d 13 (citations omitted). The Court did not, however, completely abandon the doctrine of lex loci delicti, but rather only limited its application, stating:

We are, therefore, persuaded that the time has come for the law in this state to abandon .categorical allegiance to the doctrine of lex loci delicti in tort actions.... We need not decide today, however, whether to discard lex loci in all of its manifestations. It is sufficient for us to consider whether, in the circumstances of the present case, reason and justice require the relaxation of its stringent insistence on determining conflicts of laws solely by reference to the place where a tort occurred.

*Id.* at 648, 519 A.2d 13. The Court therefore decided to "incorporate the guidelines of the Restatement as the governing principles for those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result." *Id.* at 650, 519 A.2d 13.

Since *O'Connor,* courts have disagreed as to the extent to which Connecticut has abandoned the doctrine of lex loci delicti. Some courts have continued to apply the principles of lex loci delicti unless the application of that law would produce an arbitrary or irrational result. *See, e.g., Clisham Management v. American Steel Building Co.,* 792 F.Supp. 150, 153 (D.Conn.1992). *See also, Feldt v. Sturm, Ruger & Co.,* 721 F.Supp. 403, 405 (D.Conn.1989) (noting approval of the lex loci delicti approach and refusing to adopt the Restatement approach absent a "clear statement on the subject by Connecticut's highest court"). In deciding to apply the Restatement view, one Connecticut Superior Court expressed its belief that it need not find an arbitrary or irrational result in

order to apply the interest analysis approach of the Restatement. *Scott v. United States Cycling Federation,* No. CV 91 390444S, 1992 WL 96824 (Conn.Super. May 4, 1992), at *2. Other courts have cited *O'Connor* as abandoning the lex loci delicti approach in favor of the choice of law rules promulgated in the Restatement, without qualifying the limits of the *O'Connor* opinion. *See, e.g., Comind, Companhia de Seguros v. Sikorsky Aircraft Division of United Technologies Corp.,* 116 F.R.D. 397, 418 (D.Conn.1987); *United States v. Gerena,* 667 F.Supp. 911, 922, n. 16 (D.Conn.1987).

■ In its most recent decision addressing choice-of-law rules, the Connecticut Supreme Court appears to have recognized the continued vitality of the lex loci delicti approach. After quoting *O'Connor* regarding the Court's traditional adherence to the doctrine of lex loci delicti, the Court stated:

Recently, however, we have recognized that, *in certain circumstances* in which the traditional doctrine does not apply, the better rule is the analysis contained in the Restatement (Second) of the Conflict of Laws.

*Williams v. State Farm Mutual Automobile Insurance Co.,* 229 Conn. 359, 370, 641 A.2d 783 .(1994) (emphasis added). We therefore begin our analysis with a determination of whether the traditional doctrine of lex loci delicti applies without producing an arbitrary or irrational result.

■ We find that application of the doctrine of lex loci delicti will not produce an arbitrary or irrational result. The place of the injury caused by the non-production is New York. Northern Tankers' alleged damages from the non-production of these documents are increased legal fees and prolonged litigation (which prevented Northern Tankers from obtaining a judgment against Lexmar Liberia prior to its insolvency). These increased legal fees were incurred in New York, produced by New York attorneys. The protracted litigation, including the alleged prolonged arbitration, also occurred in New York. While it may be irrational or arbitrary to apply New York law when such application would frustrate the legitimate expectation of the parties or undermine an

important policy of Connecticut, *see O'Connor*, 201 Conn. at 637, 519 A.2d 13, we find the application of New York law here would be neither irrational nor arbitrary. Backstrom and Lindholm may have intentionally withheld the documents in Connecticut, but they should not be surprised by the application of New York law to their failure to comply with a discovery request made in New York to produce documents to attorneys in New York, all concerning litigation occurring in federal court in New York. Furthermore, there does not appear to be any Connecticut policy that would be undermined by the application of New York law. Because we find that the application of New York law will not produce an arbitrary or irrational result, we apply New York law to Northern Tankers' non-production claims.[4]

### III. Civil Conspiracy

Applying New York law, we first must dismiss Northern Tankers' eighteenth claim for civil conspiracy. New York does not recognize the tort of civil conspiracy. *See Wall Street Transcript Corp. v. Ziff Communications Co.*, —— A.D.2d ——, ——, 638 N.Y.S.2d 640, 641 (App.Div. 1st Dept. 1996).

### IV. Legal Sufficiency of the Fraud and Negligence Claims

Defendants argue that both the negligence and fraudulent nondisclosure claims require the existence of a duty that does not exist here. A negligence claim requires that a duty existed, that the duty was breached, that breach of the duty was the proximate cause of the plaintiff's injury, and damages. *Green v. New York*, —— A.D.2d ——, ——, 634 N.Y.S.2d 768, 768 (App. Div.2d Dept.1995). Likewise, a fraudulent nondisclosure claim requires a duty to disclose. *See Wall Street Transcript Corp.*, —— A.D.2d at ——, 638 N.Y.S.2d at 641 (nondisclosure does not constitute fraud where there is no duty to speak under the circumstances); *Jolly King Restaurant, Inc. v. Hershey Chan Realty, Inc.*, 214 A.D.2d 422, 625 N.Y.S.2d

35, 36 (1st Dept.1995) ("Absent a duty to speak, nondisclosure does not ordinarily constitute fraud.").

Defendants argue that they were under no duty to respond to the document requests served upon Lexmar Liberia, and thus were under no duty to produce the documents at issue here. While the existence of a duty is generally a question of law for the court, *see Eiseman v. New York*, 70 N.Y.2d 175, 187, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987); *Talbot v. New York Institute of Technology*, —— A.D.2d ——, ——, 639 N.Y.S.2d 135, 136 (App.Div.2d Dept.1996), here the existence of a duty also involves a factual inquiry that cannot be resolved on a motion to dismiss.

As we have discussed in our prior decisions, defendants are alleged to be the alter egos of many corporations, including Lexmar Liberia. If Northern Tankers is successful in piercing Lexmar Liberia's corporate veil and proving that it is merely an alter ego of defendants, Lexmar Liberia's duty under the Rules of Civil Procedure to comply in good faith with the document requests clearly would also be the duty of defendants. We therefore find that defendants may be held liable for fraudulent nondisclosure for their failure to properly comply with Northern Tankers' discovery requests.

Additionally, even absent proof of alter ego status, if defendants fraudulently withheld documents, they may be personally liable to Northern Tankers for fraudulent nondisclosure. Generally, corporate officers cannot be held personally liable on the contracts of their corporations if they do not purport to bind themselves individually. *Key Bank of New York v. Grossi*, —— A.D.2d ——, ——, 642 N.Y.S.2d 403, 404 (App. Div.3d Dept.1996). "Personal liability will be imposed, however, upon corporate officers who commit or participate in the commission of a tort, even if the commission or participation is for the corporation's benefit." *Id.* (citations omitted). *See also, New York v. Apple Health and Sports Clubs, Ltd., Inc.*,

---

4. The choice-of-law issue is significant only with respect to Northern Tankers' claim of civil conspiracy. For the fraudulent nondisclosure and negligence claims, the parties agree that, for purposes of this motion, Connecticut law and New York law are identical.

206 A.D.2d 266, 613 N.Y.S.2d 868, 870 (1st Dept.1994) ("[i]ndividual corporate officers and directors are personally liable for fraud"); *New York v. Concert Connection, Ltd.*, 211 A.D.2d 310, 409, 629 N.Y.S.2d 254, 260 (App.Div.2d Dept.) ("That the corporate veil may be pierced to hold corporate officers personally liable for tortious conduct or knowing participation in fraudulent acts is a well-accepted doctrine."), *appeal dismissed*, 86 N.Y.2d 837, 634 N.Y.S.2d 445, 658 N.E.2d 223 (1995). We need not address under what circumstances a cause of action in fraud may exist for a discovery violation or under what circumstances corporate officers refusing to comply with discovery requests can be held personally liable. Here, we need only hold that when corporate officers accept responsibility for compliance with discovery requests and fraudulently refuse to disclose specific documents, they may be held personally liable for fraudulent nondisclosure. *See generally id.*, 629 N.Y.S.2d at 260 ("To hold otherwise would be an open invitation to individuals to form shell corporations for the purpose of shielding themselves from liability for illegal business transactions") (citations omitted).

Defendants argue that such a holding creates a collateral source of relief for the failure to comply with discovery requests. They argue that the ultimate issue should be whether Congress intended to create a private cause of action under the Federal Rules of Civil Procedure. *See Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 532, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989). Given the sanctions scheme for discovery violations in Rule 37, defendants argue an alternate cause of action for breach of the Federal Rules of Civil Procedure is inconsistent with Congressional intent. Additionally, defendants cite *Karahalios*, 489 U.S. at 533, 109 S.Ct. at 1286–87, for the proposition that "[i]t is an 'elemental canon' of statutory construction that where a statute expressly provides a

remedy, courts must be especially reluctant to provide additional remedies."

 We disagree with defendants' characterization of Northern Tankers' claims as an attempt to maintain a private cause of action for breach of the Federal Rules of Civil Procedure. Rather, Northern Tankers relies on the Federal Rules in order to establish the requisite duty for fraudulent nondisclosure. We are not creating a private right of action under the Federal Rules, but merely permitting the rules to establish a duty required for an existing common law claim of fraud.[5] The allowance of such a claim is particularly important when, as here, individuals who were not parties to the prior action are alleged to have fraudulently interfered with discovery.

 Defendants additionally argue that Northern Tankers' allegations of proximate cause and damages are legally insufficient to state a cause of action under fraud. We disagree. As we stated in our April 8, 1996 Order granting Northern Tankers' motion to amend its complaint to add these causes of action, we are skeptical of plaintiff's ability to prove damages. Nonetheless, on a motion to dismiss, our role is not to "weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Accordingly, we must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to plaintiff. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986).

 Northern Tankers alleges its ability to prove that the arbitration award would have been issued significantly earlier had the defendants disclosed the relevant documents, thereby reducing the time and expenses involved in the New York litigation. Northern

---

5. The parties have not cited nor are we aware of any case specifically permitting such a cause of action. New York courts do, however, permit an independent cause of action for fraud when a judgment or settlement is allegedly procured by fraud. *See, e.g., Cresswell v. Sullivan & Cromwell*, 668 F.Supp. 166 (S.D.N.Y.1987) (finding Federal Rule of Civil Procedure 60(b) inapplicable and permitting an independent action for the fraudulent procurement of a prior court settlement based on defendant's failure to produce certain documents in connection with earlier litigation).

Tankers also asserts that Lexmar Liberia would have been financially capable of satisfying at least part of the judgment had the award been confirmed prior to its insolvency. We find these allegations legally sufficient to overcome a motion to dismiss.

 Furthermore, we find that Northern Tankers has sufficiently alleged that these damages were proximately caused by the fraudulent non-production of the documents. An injury is proximately caused by an action or non-action if "it is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud." *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). Defendants might well have reasonably foreseen that a probable consequence of their alleged non-production of the documents would be prolonged litigation during which time Lexmar Liberia would become insolvent. Again, while Northern Tankers appears to have a difficult burden to satisfy at trial, we find it has sufficiently alleged proximate causation to overcome a motion to dismiss.

 We must dismiss, however, plaintiff's negligence claim. As is discussed below, such a claim is barred by a three-year statute of limitations. Additionally, Northern Tankers has not established a duty which has been breached. Contrary to our finding on the fraudulent nondisclosure claim, we do not find that the Federal Rules of Civil Procedure establish the requisite duty to support an independent action for the negligent failure to produce documents during discovery. While the need to deter fraud supports our holding with respect to the fraudulent nondisclosure claim, no such rationale exists for sanctioning a claim in negligence. *See Cresswell v. Sullivan & Cromwell*, 704 F.Supp. 392, 410–11 (S.D.N.Y.1989) (dismissing a claim for gross negligence under Federal Rule of Civil Procedure 60(b)), *aff'd in part, vacated in part on other grounds*, 922 F.2d 60 (2d Cir.1990), *after remand*, 962 F.2d 2 (2d Cir.), *cert. denied*, 505 U.S. 1222, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992). We therefore dismiss Northern Tankers' nineteenth claim for negligence.

## V. Statute of Limitations

 With respect to the claims for fraud and negligence—claims that existed at common law—Connecticut's choice-of-law rules require the application of Connecticut statutes of limitations. *See Baxter v. Sturm, Ruger and Co., Inc.*, 230 Conn. 335, 347, 644 A.2d 1297 (1994) (characterization of statute of limitation or statute of repose depends on the nature of the underlying right that forms the basis of the lawsuit. If the rights existed at common law, they are properly characterized as procedural.), *answer to certified question conformed to*, 32 F.3d 48 (2d Cir.1994).

Defendants argue that plaintiff's non-production claims are time-barred by Connecticut's three-year negligence and fraud statutes of limitations. *See* Conn.Gen.Stat. §§ 52–584, 52–577. Furthermore, defendants assert that Conn.Gen.Stat. § 52–595, permitting the tolling of the statute for fraudulent concealment causes of action, does not apply. We do not address the applicability of this tolling statute to the fraud claim, because we find that the fraudulent nondisclosure claim was filed within three years of the alleged fraud.

 Northern Tankers' cause of action for fraudulent nondisclosure rests upon alleged fraudulent conduct continuing over a period of years, including time within the three-year period prior to the filing of the amended complaint. While defendants argue that the date of the last act or omission complained of is in 1991, Northern Tankers clearly alleges the continuing fraudulent nondisclosure of the documents throughout the time period of the New York litigation. Accepting as true these allegations for the purposes of this motion, we find that Northern Tankers' fraudulent nondisclosure claim is not barred by the statute of limitations.

 Northern Tankers' negligence claim, however, is barred by the three-year statute of limitations. Any negligence by defendants in failing to produce the documents occurred at the time of the document production requests in 1990 and 1991. As discussed

above, in addition to finding that Northern Tankers has failed to state a legally sufficient claim of negligence, we dismiss the nineteenth Claim as time-barred.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the seventeenth through nineteenth claims in the second amended complaint (Document # 161) is granted with respect to Northern Tankers' civil conspiracy claim in the eighteenth claim and negligence claim in the nineteenth claim, and denied with respect to the seventeenth claim for fraudulent nondisclosure.

SO ORDERED.