**Ajudu Ismaila ADAMU et al., Plaintiffs,**

v.

**PFIZER, INC., Defendant.**

**No. 04 Civ. 1351(WHP).**

United States District Court, S.D. New York.

Nov. 8, 2005.

Richard Altschuler, Altschuler & Altschuler, West Haven, CT, for Plaintiff.

Steven Glickstein, James D. Herschlein, Julie B. du Pont, Kaye Scholer LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiffs bring this putative class action seeking redress for injuries arising from the experimental administration of an antibiotic in Nigeria by defendant Pfizer, Inc. ("Pfizer" or "Defendant").[1] Plaintiffs bring their action under 28 U.S.C. § 1350, the Alien Tort Statute (the "ATS"),[2] claiming that Pfizer violated the Nuremberg Code, the Declaration of Helsinki, the guidelines promulgated by the Council for International Organizations of Medical Services ("CIOMS"), article 7 of the International Covenant on Civil and Political Rights ("ICCPR"), Article 5 of the Universal Declaration of Human Rights and other customary international law as well as the FDA regulations. Plaintiffs also allege that Pfizer violated the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Products Liability Act ("CPLA").

Defendants move to dismiss for failure to state a claim, lack of subject matter jurisdiction, and *forum non conveniens*. For the reasons discussed below, Pfizer's motion is granted.

## BACKGROUND

### I. Brief Overview of the Facts

The facts below are taken from Plaintiffs' one hundred and forty-five page complaint, initially filed in the District of Connecticut. Plaintiffs are Nigerian minors and their guardians, all of whom are residents of Nigeria. (Complaint, dated Nov. 27, 2002 ("Compl.") ¶ 7.) Pfizer is "one of the world's largest pharmaceutical companies and [a] world premier research-based multinational pharmaceutical

---

1. In a related action involving the same underlying facts as those alleged here, this Court held that the plaintiffs failed to establish subject matter jurisdiction and, in the alternative, that the action should be dismissed on *forum non conveniens* grounds because Nigeria is an adequate forum. This Court incorporates the facts and rationales of the decisions in that case. *See Abdullahi v. Pfizer, Inc.*, No. 01 Civ. 8118(WHP), 2002 WL 31082956 (S.D.N.Y. Sept.17, 2002) (*"Abdullahi I"*), *vacated and remanded, Abdullahi v. Pfizer, Inc.*, No. 02–9223(L), 77 Fed.Appx. 48, 53 (2d Cir. Oct.8, 2003) (*"Abdullahi II"*); *Abdullahi v. Pfizer, Inc.*, No. 01 Civ. 8118(WHP), 2005 WL 1870811 (S.D.N.Y. Aug.9, 2005) (*"Abdullahi III"*). Familiarity with those decisions (collectively, *"Abdullahi"*) is presumed.

2. The Complaint refers to the ATS as the Alien Tort Claims Act ("ATCA"). However, because the statute is purely jurisdictional in nature, and does not provide a private cause of action, this Court refers to it as the Alien Tort Statute. *Abdullahi III*, 2005 WL 1870811, at *1 n. 1.

and health care company." (Compl.¶10.) Pfizer developed *Trovaflozacin Mesylate*, an antibiotic also known by the brand name "Trovan," at its Global Research and Development World Headquarters in Groton, Connecticut. (Compl.¶¶10, 13, 21.)

In early 1996, soon after an outbreak of cholera, meningitis and gastroenteritis in Nigeria, Pfizer sent a team of executives, scientists and doctors to the Infectious Disease Hospital ("IDH") in Kano to test Trovan on child patients. (Compl.¶¶7–8, 11.) *See Abdullahi I*, 2002 WL 31082956, at *1–2. Plaintiffs allege that Trovan was still "a new, untested and unproven drug." (Compl. ¶12; *see* Compl. ¶26.) Trovan was also known to have life-threatening side effects for children and adults. (Compl.¶13.) Prior animal testing indicated that Trovan might cause children to develop joint disease, abnormal cartilage growth and Osteochondrosis which could further cause improper bone formation and liver damage. (Compl.¶¶20, 24–25.) At the IDH, Pfizer selected "hundreds of Nigerian children" for participation in its experiments, but did not obtain the children's or their parents' informed consent. (Compl.¶¶12, 26.) Indeed, Pfizer did not inform the children or their parents that because Trovan was experimental, patients could refuse it and instead receive "proven safe and effective treatment." (Compl.¶12.)

At the treatment center, Pfizer divided the patients into two groups: half of the children were treated with Trovan while a control group was "intentionally low-dosed with an improperly administered control drug Ceftriaxone."[3] (Compl.¶13.) That is, Pfizer administered the Ceftriaxone at one-third of its recommended dosage to enhance the comparative results of Trovan. (Compl.¶¶13, 29.) Further, Pfizer deviat-

ed from its testing protocol by not regularly analyzing the patients' blood specimens. As a result, Pfizer failed to assess the patients' reaction to Trovan until they exhibited specific observable permanent injuries. (Compl.¶30.) At the time of the test, one of Pfizer's employees repeatedly informed Pfizer's senior management that its actions in Kano were oppressive, inappropriate and illegal. (Compl.¶23.)

Medecins Sans Frontieres ("MSF"), better known as Doctors Without Borders, was also treating IDH patients at this time. (Compl.¶15.) *See Abdullahi I*, 2002 WL 31082956, at *1. However, because of Pfizer's experimentation, the participating patients were denied adequate medical care and treatment they otherwise would have received from MSF. (Compl.¶15.) After two weeks of testing, Pfizer's team left Kano and never returned for follow-up evaluations. (Compl.¶27.) Many of the children who were administered Trovan or inadequate doses of Ceftriaxone died. (Compl.¶26.)

On November 27, 2002, Plaintiffs brought this action in the District of Connecticut, pursuant to the ATS and Connecticut statutes. Subsequently, the action was transferred to this Court as related to *Abdullahi v. Pfizer*, 01 Civ. 8118.

## II. *The* Abdullahi *Decisions*

On August 29, 2001, the *Abdullahi* plaintiffs, who were Nigerian residents, brought an action under the ATS against Pfizer for its alleged violations of international law, relying on the same sources of international law that Plaintiffs invoke in this action. The *Abdullahi* plaintiffs alleged that despite knowing that Trovan had the potential to cause serious joint and liver dam-

---

**3.** Ceftriaxone is an FDA-approved drug that has been shown as effective in treating men-

ingitis. (Compl.¶29.) *See Abdullahi III*, 2005 WL 1870811, at *1.

age, Pfizer failed to inform them of that risk or seek their informed consent and neglected to evaluate the patients following their treatment. Pfizer moved to dismiss the complaint on *forum non conveniens* grounds and for failure to state a claim. By Memorandum and Order dated September 17, 2002, this Court denied Pfizer's motion to dismiss for failure to state a claim under the ATS, but granted its motion to dismiss on *forum non conveniens* grounds. *Abdullahi I*, 2002 WL 31082956, at *6–12. This Court held that the action should be litigated in Nigeria where the alleged incidents took place. *Abdullahi I*, 2002 WL 31082956, at *12. The *Abdullahi* plaintiffs appealed that ruling.

On appeal, the *Abdullahi* plaintiffs asked the Second Circuit to take judicial notice of the fact that a parallel action filed in Nigeria, *Zango v. Pfizer International, Inc.*, Case No. FHC/K/CS/204/2001 (Nigeria) (the *"Zango* proceedings"), involving different plaintiffs but the same course of conduct by Pfizer, was voluntarily dismissed on August 19, 2002.[4] *Abdullahi II*, 77 Fed.Appx. at 52. In particular, the *Abdullahi* "[p]laintiffs request[ed] that [the Second Circuit] notice both the fact of the dismissal 'and the reasons for it.'" *Abdullahi II*, 77 Fed.Appx. at 52. The *Abdullahi* plaintiffs argued that the *Zango* plaintiffs' Notice of Discontinuance evidenced their reasons for discontinuing the action: "The notice blames an indefinite adjournment and the fact that the judge hearing the case declined jurisdiction 'for personal reasons.'" *Abdullahi II*, 77 Fed. Appx. at 52. Pfizer objected to the *Abdullahi* plaintiffs' request, and asked the Second Circuit to take notice of "the entire *Zango* docket, minutes and rulings," arguing that the full record demonstrated "that the *Zango* plaintiffs' version of events (as

outlined in the Notice of Discontinuance) [was] disingenuous." *Abdullahi II*, 77 Fed.Appx. at 52.

Because the parties offered conflicting understandings of the *Zango* proceedings and had not submitted the *Zango* record for the Court's review, the Second Circuit declined to take judicial notice of the matters requested by either side. The Court of Appeals noted that the facts of the Nigerian case "would seem to be relevant to the *forum non conveniens* analysis— perhaps providing just the type of specific information that the District Court found lacking," and remanded the case to this Court "to determine what precipitated the dismissal in *Zango* and to evaluate whether that impacts the District Court's *forum non conveniens* analysis." *Abdullahi II*, 77 Fed.Appx. at 53.

In addition, the Court of Appeals noted that another panel of the Second Circuit had recently decided *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233 (2d Cir. 2003), which held that claims of local, intranational environmental pollution were not actionable under the ATS because such pollution does not violate customary international law. However, because "Pfizer did not address [the ATS' applicability] before the District Court" and "[b]oth parties ha[d] glossed over the issue on appeal," the Second Circuit did not address whether it had jurisdiction under the ATS. *Abdullahi II*, 77 Fed.Appx. at 53.

On September 8, 2004, this Court held oral argument on the *forum non conveniens* issue framed by the Court of Appeals, and granted Pfizer's request to file a new motion to dismiss for the *Abdullahi* plaintiffs' failure to state a claim under the ATS. By Memorandum and Order dated August 9, 2005, this Court granted Pfizer's

---

4. While "[t]he *Zango* plaintiffs' Notice of Discontinuance was dated August 19, 2002, … it

was not actually filed until October 17, 2002." *Abdullahi II*, 77 Fed.Appx. at 52 n. 2.

motion to dismiss because "none of the sources of international law [*Abdullahi*] Plaintiffs rel[ied] upon support[ed] jurisdiction under the ATS." *Abdullahi III*, 2005 WL 1870811, at *14. Further, this Court held that despite the record of the *Zango* proceedings, Nigeria was an adequate alternative forum for the litigation and dismissal on *forum non conveniens* grounds was warranted. *Abdullahi III*, 2005 WL 1870811, at *18.

### DISCUSSION

#### I. *Motion to Dismiss Standard*

█ A court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the "jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Magee v. Nassau County Med. Ctr.*, 27 F.Supp.2d 154, 158 (E.D.N.Y. 1998); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.1990). A motion to dismiss for subject matter jurisdiction under Rule 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.2003). On a motion to dismiss, a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiffs' favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). Although on a motion to dismiss a court is generally limited to examining the sufficiency of the pleadings, where, as here, a challenge is directed at the court's subject matter jurisdiction, the court may examine materials outside the complaint to resolve jurisdictional issues. *See Flores*, 414 F.3d at 255 n. 30; *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir.1998); *In re S. African Apartheid Litig.*, 346 F.Supp.2d 538, 546 (S.D.N.Y.2004).

#### II. *Claims Under the ATS*

Plaintiffs rely on the Nuremberg Code, the Declaration of Helsinki, the guidelines authored by the CIOMS, article 7 of the ICCPR, Article 5 of the Universal Declaration of Human Rights and the FDA regulations to frame their ATS claim. (Compl.¶¶ 321–52.) Pfizer moves to dismiss for failure to state a claim and lack of subject matter jurisdiction under the ATS. While this action could be dismissed solely on *forum non conveniens* grounds, *see Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 497–98 (2d Cir.2002), this Court also considers the question of subject matter jurisdiction under the ATS for the sake of judicial efficiency.

█ The ATS does not itself create a private right of action. Rather, the statute provides district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350; *see also Sosa v. Alvarez–Machain*, 542 U.S. 692, 698–99, 124 S.Ct. 2739, 2747, 159 L.Ed.2d 718 (2004); *Flores*, 414 F.3d at 237. "The [ATS] permits an alien to assert a cause of action in tort for violations of a treaty of the United States and for violations of the law of nations, which … refers to the body of law known as customary international law." *Flores*, 414 F.3d at 247 (internal quotation marks omitted). Here, Plaintiffs are aliens who allege cognizable tort causes of action. Thus, for federal subject matter jurisdiction to exist under the ATS, the complaint must adequately plead a violation of international law. *See Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir.1995) ("Because the [ATS] requires that plaintiffs plead a 'violation of the law of nations' at the jurisdictional threshold, this statute requires a more searching review of the merits to establish jurisdiction

than is required under the more flexible 'arising under' formula of section 1331 [federal question jurisdiction]." (quoting *Filartiga v. Pena–Irala*, 630 F.2d 876, 887–88 (2d Cir.1980))); *see also Bigio v. Coca–Cola Co.*, 239 F.3d 440, 447 (2d Cir. 2000) (under the ATS, pleading a violation of the law of nations is a jurisdictional prerequisite).

▮▮▮ Plaintiffs contend that Pfizer's non-consensual medical experimentation violated the law of nations, *i.e.*, customary international law. However, the law of nations does not itself create a right of action because it does not prescribe a remedy. Whether and how the United States reacts to violations of international law are domestic questions that determine if a cause of action exists. *See In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1475 (9th Cir.1994); *see also Sosa*, 124 S.Ct. at 2754–55; *Kadic*, 70 F.3d at 246 ("The law of nations generally does not create private causes of action to remedy its violations, but leaves to each nation the task of defining the remedies that are available for international law violations."). While federal courts have the authority to imply the existence of a private right of action for violations of *jus cogens* norms of international law, *see Sosa*, 124 S.Ct. at 2744, they must consider whether "special factors counseling hesitation in the absence of affirmative action by Congress" exist, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *see Sosa*, 124 S.Ct. at 2763.

▮▮▮ Here, the key question is should this Court infer the existence of a private right of action from the alleged violations of international law. An implied private action lies under the ATS "only for viola-

tions of treaties or customary international law." *Flores*, 414 F.3d at 253; *see Sosa*, 124 S.Ct. at 2761–62. Thus, because Pfizer is not alleged to have violated any treaty, to state a claim under the ATS, Plaintiffs must demonstrate violation of a "clear and unambiguous" rule of customary international law. *Filartiga*, 630 F.2d at 884 (holding that because the prohibition on official torture is "clear and unambiguous," it can serve as a basis for suit under the ATS). This Court has already discussed in *Abdullahi III*, 2005 WL 1870811, at *11–14, why the sources of international law on which Plaintiffs rely do not create jurisdiction under the ATS. For the sake of brevity, this Court incorporates *Abdullahi III'* s analysis of the various sources of international law, and concludes that none of the sources of international law that Plaintiffs advance provide a proper predicate for jurisdiction under the ATS.[5]

### III. Claims Under the Connecticut Statutes

▮▮▮ Plaintiffs also bring Connecticut statutory claims under the CUTPA and the CPLA. (Compl.¶¶ 300–20.) Pfizer moves to dismiss these claims, arguing that under Connecticut choice of law principles, this action is governed by Nigerian law—not Connecticut statutes. Here, there is no dispute that Nigerian law affords redress for Plaintiffs' claims. (Compl.¶ 6(j).) *See Abdullahi III*, 2005 WL 1870811, at *3–5.

Because this action originated in the District of Connecticut, this Court as "the transferee district court [is] ... obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Chaiken v. VV Pub. Corp.*, No. 91

---

5. Because this Court does not have jurisdiction under the ATS, it declines to consider Pfizer's arguments regarding dismissal under Rule 12(b)(6) for failure to state a claim.

Civ. 2102(JFK), 1991 WL 177269, at *2 (S.D.N.Y. Sept.4, 1991); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984,* 634 F.Supp. 842, 866 (S.D.N.Y.1986). Thus, Connecticut choice of law principles apply to this action.

Connecticut adheres to the doctrine of *lex loci delicti,* under which the "substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury." *O'Connor v. O'Connor,* 201 Conn. 632, 637, 519 A.2d 13, 15 (1986); *accord Williams v. State Farm Mut. Auto. Ins. Co.,* 229 Conn. 359, 370–71, 641 A.2d 783, 789 (1994). However, where strict application of *lex loci delicti* would frustrate "the legitimate expectations of the parties" or undermine "an important policy of this state," Connecticut courts refuse to apply the doctrine. *O'Connor,* 201 Conn. at 637, 519 A.2d 13. *O'Connor* remains the leading case on this issue from the Connecticut Supreme Court. *O'Connor* involved an action by an automobile passenger against the driver for injuries arising from an out-of-state automobile accident. As described in a more recent decision, *O'Connor's* facts may be summarized as follows:

> Both parties were Connecticut domiciliaries but the accident occurred in Quebec, Canada. The principal issue was whether to apply the law of Quebec, which barred the plaintiff's action, or the law of Connecticut, which permitted it. The trial court applied the doctrine of lex loci delicti and granted the defendant's motion to strike the plaintiff's complaint. On appeal, [the Connecticut Supreme Court] substituted the "most significant relationship" analysis of §§ 6 and 145 of the Restatement [ (Second) of the Conflict of Laws] ... for the doctrine of lex loci delicti.... After considering the Restatement factors, [the Connecticut Supreme Court] concluded that Connecticut had the closest rela-

tionship and the greatest interest in the disposition of the case. [It] therefore applied the law of Connecticut.

*Williams,* 229 Conn. at 371–72, 641 A.2d at 789.

Section 145 of the Restatement (Second) of Conflict of Laws provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second), Conflict of Laws § 145(1). Section 6, in turn, provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second), Conflict of Laws § 6. For assistance in evaluating the "policy choices set out in §§ 145(1) and 6(2) [of the Restatement]," a court should consider § 145(2) "which establishes black-letter rules of priority to facilitate the application of the principles of § 6 to tort cases." *O'Connor,* 201 Conn. at 652, 519 A.2d 13;

*accord Dugan v. Mobile Medical Testing Services, Inc.,* 265 Conn. 791, 800–02, 830 A.2d 752, 760 (2003). That subsection provides:

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second), Conflict of Laws § 145(2).

The alleged improper conduct is Pfizer's failure to inform the children or their parents about the potential problems with Trovan (Compl.¶ 12), and the administration of Trovan and low dosage of Ceftriaxone (Compl.¶¶ 13, 15, 26–27). Application of the § 145(2) factors suggests a strong case for applying Nigerian law because the Nigerian contacts to this litigation are stronger than Connecticut's. *See Williams,* 229 Conn. at 372, 641 A.2d at 789 (applying New York law where the accident happened in New York); *Norton v. Michonski,* 368 F.Supp.2d 175, 179 (D.Conn.2005) (applying Massachusetts law where automobile accident occurred in that state); *N. Tankers (Cyprus) Ltd. v. Backstrom,* 934 F.Supp. 33, 38–39 (D.Conn.1996) (New York law applied because "the place of the injury ... [was] New York"); *Icelandic Coast Guard v. United Techs. Corp.,* 722 F.Supp. 942, 949 (D.Conn.1989) (noting that "a strong case [could] be made for the application of Icelandic law," where the helicopter crash occurred off the coast of Iceland). First, Plaintiffs' injuries occurred in Nigeria. Second, Pfizer's alleged improper actions occurred in Nigeria. Third, Plaintiffs are Nigerian nationals and reside there; Pfizer, on the other hand, is a Delaware corporation with its headquarters in New York. (Compl.¶ 6.) Finally, Nigeria is the place where the parties' relationship is centered. Thus, factors (a), (b) and (d) point toward applying Nigerian law, while factor (c) is in equipoise.

Plaintiffs' sole basis for arguing that Connecticut law should govern is that Pfizer performed research and development with respect to Trovan and planned the Nigerian experiment in Connecticut. (Transcript of Oral Argument, dated Oct. 21, 2005, at 17–21.) However, this sole contact with Connecticut is insufficient to defeat the Nigerian interest in applying its own laws. *See Feldt v. Sturm, Ruger & Co.,* 721 F.Supp. 403, 404–05 (D.Conn.1989) (holding that under *lex loci delecti,* Georgia law applies because "plaintiffs live[d] in Georgia, the gun in question was kept in Georgia, and the injury occurred in Georgia, even though the defendant's principal place of business was Southport, Connecticut", and the "handgun in question was manufactured by the defendant in Connecticut"); *see also N. Tankers Ltd.,* 934 F.Supp. at 39–40 ("[A]pplication of New York law here would be neither irrational nor arbitrary," or "produce an arbitrary or irrational result" because "[t]he place of the injury ... is New York," and "alleged damages ... were incurred in New York."); *Icelandic Coast,* 722 F.Supp. at 948.

Therefore, Nigerian—not Connecticut—substantive law governs, and Plaintiffs' claims under the CUTPA and the CPLA are dismissed.

## IV. *Forum Non Conveniens*

"*[F]orum non conveniens* is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir.2000) (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998)); *see Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir.2001) (en banc). Dismissal is appropriate where "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991). First, the defendant must demonstrate the existence of an adequate alternative forum. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996); *see also Calavo Growers of Calif. v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir.1980) (*forum non conveniens* "presupposes that an alternative forum is available"). If an adequate forum is available, the court then considers the public and private interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and its progeny. *See Bank of Credit & Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir.2001); *Wiwa*, 226 F.3d at 100. Based on those factors, a court examines whether a trial in the plaintiff's chosen forum would create "oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or whether the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). After considering the "private interest factors" concerning the convenience of the litigants and "public interest factors" affecting the convenience of the forum, a "court may, in the exercise of its sound discretion, dismiss the case." *Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. 252.

### A. *Adequate Alternative Forum*

Here, the parties have agreed to be bound by this Court's determination in *Abdullahi III* that an adequate alternate forum exists in Nigeria. (*See* Stipulation and Order, dated Mar. 18, 2005 (Docket No. 8).) In *Abdullahi I*, this Court held "in light of Pfizer's showing that it is 'amenable to process' in Nigeria, and the conclusory nature of plaintiffs' evidence regarding the inadequacy of Nigeria's legal system, ... this [was] not one of those 'rare circumstances' where the potential difficulties of the foreign forum render the remedy offered by that forum 'clearly unsatisfactory.'" 2002 WL 31082956, at *10 (citing *Piper Aircraft*, 454 U.S. at 255 n. 22, 102 S.Ct. 252). In *Abdullahi III*, this Court concluded that the *Zango* dismissal did not impact the *forum non conveniens* analysis and that "Nigeria is an available alternative forum for this litigation." 2005 WL 1870811, at *18. Similarly, this Court finds that Nigeria is an available adequate alternate forum for this litigation.

### B. Gilbert *Factors*

Because Nigeria provides an adequate alternative forum, this Court must weigh the *Gilbert* public and private interest factors to determine which forum "will be most convenient and will best serve the ends of justice." *Peregrine Myanmar*, 89 F.3d at 46; *accord Abdullahi I*, 2002 WL 31082956, at *10. The *Gilbert* public interest factors include (1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding problems in conflict of laws and the application of foreign law. *Gil-*

*bert,* 330 U.S. at 508–09, 67 S.Ct. 839; *Iragorri,* 274 F.3d at 74. The *Gilbert* private interest factors include (1) the ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive. *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252.

Plaintiffs have demonstrated no meaningful ties to this district, the District of Connecticut or the United States. Instead, Plaintiffs argue that this Court should defer to their choice of forum because Pfizer performed research and development with respect to Trovan and made plans for the Nigerian experiment in Connecticut. However, such allegations do not affect Plaintiffs' ties to the state.[6] *Abdullahi I,* 2002 WL 31082956, at *10.

Because Plaintiffs assert claims under international law, any concerns regarding the difficulty in applying foreign law are not present here. Moreover, it is undeniable that Nigeria has a very strong interest in this litigation. The Trovan testing occurred in Nigeria and all the alleged victims are Nigerian. Further, Plaintiffs allege that Pfizer's experiment was made possible with the aid of several of Nigeria's own government officials. (Compl.¶ 6(h).) *See Abdullahi I,* 2002 WL 31082956, at *10–11; *see Piper Aircraft,* 454 U.S. at 260, 102 S.Ct. 252 (citing *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839) (There is "a local interest in having localized controversies decided at home."). On the other hand, citizens of this district as well as the District of Connecticut share an interest in

this litigation because Pfizer developed, produced and performed preliminary testing of Trovan and designed the Kano treatment protocol within the United States as part of its plan to obtain FDA approval to sell and distribute Trovan domestically. *See Carlenstolpe v. Merck & Co., Inc.,* 819 F.2d 33, 35 (2d Cir.1987) (affirming a finding that there was a strong United States public interest in a products liability action concerning a vaccine that was developed in the United States but approved for distribution in Sweden). Thus, the *Gilbert* public interest factors do not strongly support either forum over the other. *Abdullahi I,* 2002 WL 31082956, at *11.

With regard to the *Gilbert* private interest factors, while discovery related to Pfizer's alleged tortious conduct must occur within the United States, Plaintiffs must establish proof of causation, injury and damages. *See Abdullahi I,* 2002 WL 31082956, at *11. Witnesses crucial to those factual inquiries—including the local hospital personnel who communicated with the Plaintiffs during the Trovan treatment, the Nigerian government officials who approved the study, the Kano IDH Ethics Committee and other Nigerian individuals with knowledge of the relevant events—are all located in Nigeria. Thus, evidence of numerous elements essential to Plaintiffs' claims is beyond Plaintiffs' control and, therefore, not amenable to discovery in this forum.

Further, most of the documents and witnesses located in the United States are within Pfizer's control. Pfizer has stipu-

---

6.  Plaintiffs' choice of forum is not entitled to a greater deference because they have alleged international law violations. *See Aguinda v. Texaco, Inc.,* 142 F.Supp.2d 534, 553 (S.D.N.Y.2001) (even if the court assumed that Texaco participated in a violation of international law that would support the claim brought under the ATS, "neither that assump-

tion nor any of the other considerations special to these cases materially alters the balance of private and public interest factors that, as previously discussed, 'tilt[s] strongly in favor of trial in the foreign forum.' " (citing *Wiwa,* 226 F.3d at 106) (internal citation omitted)).

lated that it will facilitate any Nigerian action by providing Plaintiffs with relevant records; making past or present Pfizer employees available for depositions pursuant to 28 U.S.C. § 1782; and using its "best efforts" to make past and present employees of Pfizer who would be subject to subpoena in the Southern District of New York available to testify at trial in Kano at Pfizer's cost. (Pfizer's Memorandum in Support of its Motion to Dismiss, dated Sept. 19, 2005 at 15–16.) *See Abdullahi I,* 2002 WL 31082956, at *12; *Aguinda,* 142 F.Supp.2d at 550 (defendant adequately addressed plaintiffs' concern for U.S. discovery through a stipulation). Thus, the balance of the *Gilbert* private interest factors clearly weighs in favor of granting Pfizer's motion to dismiss for *forum non conveniens. Abdullahi I,* 2002 WL 31082956, at *12.

### CONCLUSION

For the foregoing reasons, this Court grants Pfizer's motion to dismiss the Complaint for lack of subject matter jurisdiction under the Alien Tort Statute, Connecticut Unfair Trade Practices Act and the Connecticut Products Liability Act. Even if this Court had subject matter jurisdiction, it would dismiss the action on *forum non conveniens* grounds for the reasons stated in Part IV. This Court would condition dismissal on *forum non conveniens* grounds on the following grounds:

1. Defendant Pfizer consents to suit and acceptance of process in any suit Plaintiffs file in Nigeria on the claims that are the subject of the instant suit;

2. Defendant Pfizer waives any statute of limitations defense that may be available to it in Nigeria;

3. Defendant Pfizer makes available for discovery and for trial, at its own expense, any documents, or witnesses, including retired employees, within Pfizer's

control that are needed for a fair adjudication of Plaintiffs' claims; and

4. Defendant Pfizer will not act to prevent Plaintiffs from returning to this Court if the Federal High Court in Nigeria declines to accept jurisdiction of this action, if it is filed in Nigeria within 60 days of the entry of this Order.

The Clerk of the Court is directed to mark this case closed.

SO ORDERED.